GLADNEY, Judge.
This appeal, lodged by Almond Bros. Lumber & Supply, Inc. and Consolidated Underwriters seeks reversal of a judgment awarding workmen’s compensation for total and permanent disability. By answer to the appeal Herman Banks, appellee, urges his entitlement to penalties and attorneys’ fees.
The status of the employment, the hazardous nature thereof, the rate of pay and the occurrence of the accident were not controverted. Banks, who had been employed by Almond Bros. Lumber & Supply, Inc., for a period of four years or more, on March 23, 1964, was performing the duties of his employment as a common laborer in his employer’s lumber yard assisting in the loading of lumber by means of a forklift when his left hand was caught between a chain and pulley and the forefinger or index finger and the middle finger were mashed. The injury was sufficiently severe to require the amputation of the index finger at the second metacarpophalangeal joint. The middle finger sustained a laceration and rupture of the extensor tendon at the distal joint. The employee received no other injuries and only the two fingers were involved. Following maximum recovery, the employee was released by his attending physician as able to return to work and perform the duties of his employment. Banks was requested to return to his job, but refused, stating he was not able to work. He testified that since the accident he has operated a truck and lawn mower and has done some fencing. Maximum compensation of $35 per week was paid for a period of 60 weeks.
The benefits so paid were predicated on LSA-R.S. 23:1221(4) which, inter alia, provides for the loss of the first or index finger, the employee should be paid 65% of wages during 30 weeks, and for the loss of any other finger, 65% of wages during 20 weeks. Compensation for the loss of a hand is paid for a period of 150 weeks. This section of the Act further stipulates that the loss of the use of a member is equivalent to the amputation of the member and it is expressly set forth that:
* * * * * *
“(l) The loss of more than one phalanx of a thumb, or more than two phalanges of any finger or toe shall be considered as the loss of the entire member; provided, however, that in no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand, or the amount received for the loss of more than one toe exceed the amount provided in this schedule for the loss of a foot.
* * * * * *
“(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total *715 loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.” [LSA-R.S. 23:1221(4), (1), (o)]
Appellee’s counsel contends that the injuries to the left hand are permanently disabling and prevent the employee from earning a livelihood in performing work of the same or of a similar nature, that is, of a common laborer; that Banks is substantially handicapped in competing with other able-bodied workers in the common labor market; and that the statutory provisions as to payment for specific injuries are inapplicable.
Medical testimony was given by Dr. Jackie D. Huckabay, a physician and surgeon, and by Doctors Ray E. King and E. C. Simonton, orthopedists.
Dr. Huckabay attended the employee at the time of injury on March 23, 1964, at which time he amputated the index finger and treated the middle finger. Four days of hospitalization followed and injuries were kept under observation by this doctor until June 16, 1964. Dr. Huckabay testified that as of the time of trial the pad of the amputated finger was good and gave no indication of tenderness or pain at the amputation site nor was there pain evidenced in the long finger. It was his opinion ap-pellee was not disabled to earn a living because of his injuries although there would be some residual disability from the stiffness of the middle finger at the distal joint and from the loss of the index finger.
Dr. Ray E. King’s first examination was on October 27, 1964, at which time he observed the site of the amputation and the long finger which was straight at the distal joint. Upon closing all fingers tightly the long finger lacked an inch striking the palm of the hand. He found no other abnormality in the wrist joint or hand. Corrective surgery was performed on the long finger on December 29, 1964. Following this operation there remained some stiffness of the distal joint of the long finger which could be closed down tightly and strike the base of the thumb. In evaluating the total loss of the index finger and the disability of the long finger, Dr. King, employing the chart devised by the American Medical Association, assessed a disability of 22½ per cent of the left hand, or 9 per cent of the body as a whole. The patient was discharged on January 20, 1965 and advised he should be able to perform the duties of his former employment or do similar work for some other lumber company. The doctor was of the opinion that because of his disability Banks would not be able to handle some heavy lumber as well with four fingers instead of five and the partial injury to one but that he was able to do the ordinary work of a manual laborer. He conceded that if the laborer went into the common labor market, his injuries would have some effect in competing with other laborers who had two good hands but appellee was capable of doing other types of labor, such as driving a truck or automobile or yard work and using farm tools.
Dr. E. C. Simonton examined Herman Banks October 27, 1965, approximately a year and a half after the accidental injury and estimated the employee had sustained a permanent partial disability of the left hand of 25 per cent. In giving his evaluation, also predicated on the chart of the American Medical Association, he testified the upper extremity (the left hand) represented approximately 40 per cent of the body as a whole. Translated into terms of plaintiff’s disability, such disability constituted 10 per cent of the body as a whole, which was considered minimal. Regarding the ability of the worker to perform the duties of a common laborer in a lumber yard, Dr. Sim-onton was of the opinion that Banks could lift 50 to 60 pounds of weight fairly consistently. Asked whether Banks was presently rehabilitated to resume the same or similar work, the witness gave the opinion *716 that he was able to go back to that type of work and could perform heavy work up to a certain point, there being “some gray area that you just have to speculate about” and that the ability to go forward from that point would depend upon his determination to perform his work.
As we appreciate the testimony of the aforementioned medical experts, Banks’ injuries, although permanent, did not render him totally disabled from performing the same or similar work as a common laborer and that he should return to his job and be able to perform his duties, although there would be some impairment in the use of his left hand. The record indicates appellee is right-handed.
Relying upon its medical information, compensation was paid by the insurer for a period of 60 weeks, which, it contends, was greater than that provided by the statute for permanent partial impairment of 25 per cent of the left hand. In computing the total amount recoverable compensation was rated at $10 per week for 150 weeks, or a total of $1,500. Defendants have paid $2,100 in addition to all medical expenses.
Plaintiff must establish his case for entitlement of workmen’s compensation by a preponderance of the evidence and in doing so he carries the burden of proof. He must show that the accidental injuries to the forefinger and middle finger of his left hand have substantially decreased his ability to compete in the flexible common labor market, or that such disability causes him to work in pain. In determining whether or not the employee has become totally disabled to do any “work of any reasonable character” within the meaning of the Workmen’s Compensation Act LSA-R.S. 23:1221, the jurisprudence reflects different rules of application for the skilled, the semiskilled and the unskilled workman. In so classifying the laborer, our courts have experienced difficulty and our Supreme Court in Brannon v. Zurich General Accident & Liability Insurance Company, 224 La. 161, 69 So.2d 1 (1953) stated no hard and fast rule can be laid down for guidance, but each case must stand upon its own peculiar facts.
It is not disputed that Herman Banks, when injured, was a common laborer and for the four years preceding the accident was so employed in the lumber yard of Almond Bros. Lumber Supply, Inc. Such a laborer is not considered as being disabled from performing “work of any reasonable character” unless his disability is of such a nature that it substantially handicaps him in competing with able-bodied men in the common labor market. The law, however, does not expect, contemplate or require that an employee should work in pain in order to earn a living, and where substantial pain results from an injury, the medical estimate of percentage disability will be disregarded and compensation for total disability will be awarded. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1963).
Applying the foregoing legal principles to the established facts of the instant case, we have concluded that plaintiff, although with disability of a permanent nature, is not totally disabled. All medical experts were in accord in that plaintiff could return to the same or similar employment and perform work of any reasonable character and would not suffer pain of a substantial nature while engaged in his work. We hold, therefore, that appellee is not so substantially handicapped as to prevent him from competing with able-bodied men in the common labor market, especially where other jobs open to common labor may be performed by him without functional loss due to the impairment in the use of his hand. As we understand the evidence plaintiff could substantially perform all lifting required by his former job or similar work. Further, we find compensation due the employee was paid in accordance with the provisions of the statute and the trial court was in error in reaching a determination that appellee was entitled to *717 be paid statutory benefits for total and permanent disability.
Accordingly, the judgment from which appealed is annulled and set aside, and plaintiff’s demands are dismissed at his cost.