HOOD, Judge.
This is a workmen’s compensation suit, instituted by Arthur Lee Jones against his employer, Woodson Construction Company, Inc., and the latter’s insurer, Liberty Mutual Insurance Company. Judgment was rendered by the trial court in favor of defendants, and plaintiff has appealed.
On this appeal plaintiff claims workmen’s compensation benefits for a period of only about seven weeks, beginning August 8 and ending on September 27, 1966. The principal issue presented is whether plaintiff was disabled, within the meaning of the workmen’s compensation act, during any part of that seven week period of time.
The accident which gave rise to this suit occurred on August 8, 1966, while plaintiff was working as a common laborer for Woodson Construction Company. He was unloading some pipe from a truck, and a length of pipe rolled on his right foot, wedging his foot between the pipe and a part of the truck and causing him to sustain an injury to his foot. He continued working for about 30 minutes after the accident occurred, but his foot began swelling about that time so he left the job to seek medical attention.
Dr. Michael E. Boustany, a general surgeon, made a clinical and x-ray examina *152 tion of plaintiff on the day the accident occurred. The only objective sign of injury which he found was a contused area of the right foot. The x-ray examination which he made on that date was negative for fracture. Dr. Boustany testified that “The injury appeared to be minimal to moderate type of a contusion and it was estimated that no more than a week of disability should follow this type of injury.” He treated plaintiff on that day and on two other occasions, and he discharged him on August 15, 1966, one week after the accident occurred, as being “able to do his work without any substantial degree of pain and difficulty * * *”
Plaintiff was also examined by Dr. James M. McCarthy, a general practitioner, on August 16, 1966. No x-rays were made by Dr. McCarthy, however, and apparently no diagnosis was made by him as to plaintiff’s condition. The doctor simply recommended that plaintiff use crutches and return to the office in one week. Plaintiff did not return for any further examination or evaluation by that physician.
Another x-ray examination was made of plaintiff’s foot on August 22, 1966, by Dr. Jerome J. Romagosa, a radiologist. Dr. Romagosa did not testify, but by stipulation his report was filed in evidence, and it recites:
“There is a faintly visualized irregular oblique fracture in the midshaft of the first metatarsal bone. There is no displacement of the fragment. Bulky callus is seen surrounding the fracture site. No other bone or joint pathology is observed.”
Upon being informed of the results of the last mentioned x-ray examination, Dr. Boustany re-examined his original x-ray films and concluded that plaintiff had sustained a fracture, of the first metatarsal bone of the right foot. He testified, however, that it was “a very minimal type of fracture,” that it was “not even a complete break through the shaft of the bone,” that he would classify the pain which plaintiff suffered from that type of fracture “as a minimal type of pain that a person could get by with doing manual labor,” and that in spite of the fracture he felt that plaintiff “could have returned to duty after a week’s time, because it was just a little nick, cortical, a tear in the cortex.”
Plaintiff was examined and treated by Dr. George Bourgeois, a general practitioner, on August 22, 1966, and he also was treated by that doctor on August 29 and September 27, 1966. On the last mentioned date plaintiff was discharged as being able to return to work. Dr. Bourgeois did not examine the x-ray films which had been made by Dr. Romagosa, but he interpreted the report of that radiologist as being that plaintiff had sustained “a complete fracture, completely through the shaft,” but without any displacement. He thus disagreed with the interpretation of the report made by the first examining physician. Dr. Bourgeois testified that since there was no displacement it was not necessary to splint or immobilize the foot, and that the treatment which he administered to plaintiff consisted merely of symptomatic treatment. He felt that plaintiff experienced pain for a period of time between' the date of the accident and the day he was discharged, but the doctor was unable to characterize the pain as being severe. He testified “I would have to say that he probably did experience pain. Whether he worked or didn’t work he experienced pain for a period of time.”
Plaintiff is 22 years of age. He had worked for the defendant construction company for eight or nine months before the accident occurred, and he usually worked seven days per week. He returned to work for the same employer on August 11, 1966, which was three days after the accident occurred, and he continued to work at the same job, performing the same duties seven days per week at the same rate of pay, until sometime in December, 1966, when his employment was terminated. He does not contend that his injury had anything to do with the termination of his employment.
*153 The office manager of Woodson Construction Companjr testified that according to the records of his office plaintiff has worked an average of more than 90 hours per week since the date of the accident, which is at least as many hours per week as he worked prior to that date. The superintendent of that company testified that since the accident occurred plaintiff has performed all of the duties of his employment without any complaints and without any apparent difficulty. Shortly after the accident occurred the superintendent asked plaintiff if he suffered pain in his foot, and plaintiff replied, “No, it is a little sore,” but that it was not sore enough to prevent him from working.
Plaintiff testified that for some time after the accident occurred his foot pained him as he worked, and that when he went home after work he would soak his foot in warm epsom salts water and would rub it with alcohol. He stated, “I can’t describe the pain, but I mean it was paining me.” His wife corroborated his statements that he complained of pain in his foot “for about a month” after the accident occurred, and that during that time his foot would become swollen and he would soak it in warm water with epsom salts in it at nights. Plaintiff’s father also supported his testimony that he has complained of pain in his foot since the accident. His father also testified, contrary to the facts shown by the records of the employer, that plaintiff was able to work only about two hours per day after the accident, and that “he wasn’t drawing nothing.”
The trial court concluded that plaintiff had failed to show that he suffered substantial pain while working at his employment after the accident occurred. In so holding, the court said:
“The Court can’t from the medical decide that he was in substantial pain and it certainly can’t from his testimony in view of the, at least, to say inconsistency. The Court has a difficult time when he can believe everything the witness says to decide some of these matters. Certainly, if the Court has to doubt the veracity of the witness, then he is further handicapped, and in order to determine that the man worked in substantial pain after the accident, the Court would have to rely on his testimony in the main and his father’s testimony, and I just can’t put credence in their stories.”
A compensation claimant will not be held to be disabled and thus entitled to compensation benefits solely because he suffers some residual pain or discomfort when he attempts to work following an industrial accident. The residual pain or discomfort which he suffers will be considered as being disabling only if it is substantial enough or sufficiently intense that it either prevents the worker from carrying out some of the functions of his job, or where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962); Taylor v. Meeker Sugar Cooperative, Inc., 177 So.2d 140 (La.App.3d Cir. 1965); Price v. Walgreen’s Company, 204 So.2d 67 (La.App.4th Cir. 1967); Caves v. Billups Western Petroleum Co., 203 So.2d 877 (La.App.1st Cir. 1967); Landry v. Central Excavation Company, 196 So.2d 571 (La.App.3d Cir. 1967); Flowers v. E. M. Toussel Oil Company, 190 So.2d 147 (La.App. 4th Cir. 1966, writ refused); Lavergne v. Southern Farm Bureau Casualty Insurance Company, 171 So.2d 751 (La.App.3d Cir. 1965); Hebert v. Your Food Processing & Warehouse Company, 170 So.2d 765 (La.App.1st Cir. 1965), affirmed 248 La. 197, 177 So.2d 286.
In the instant suit we agree with the trial judge that plaintiff has failed to establish that he suffered substantial or great pain at any time while performing the duties of his employment after the accident. ’ He was disabled for two or three days after he sustained this injury, and we think he suffered some pain in his foot for *154 a few days after he first returned to work following the accident. The evidence does not indicate, however, that the pain he suffered after he returned to work was sufficiently intense to prevent him from performing his duties or that the fulfillment of his duties would have been deleterious to his health. Since the period of his disability did not exceed one week, no compensation benefits were due. LSA-R.S. 23:1224. We find no error, therefore, in the judgment which was rendered by the trial court.
Having concluded that plaintiff is not entitled to recover compensation benefits, it is unnecessary for .us to consider plaintiff’s claim for penalties and attorneys fees.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.