HOOD, Judge.
This is a Workmen’s Compensation suit instituted by Bernice Mouton against his former employer, Philip Habetz, and the latter’s insurer, Coal Operators Casualty Company. Plaintiff demands compensation benefits based on allegations that he is permanently and totally disabled. The trial judge found that plaintiff was disabled, as alleged, and also that he was disfigured. Judgment was rendered in favor of plaintiff, awarding him compensation at the rate of $29.95 per week for 400 weeks, and the additional sum of $1462.50, representing compensation for an added period of 50 weeks for permanent disfigurement. Defendants have appealed.
The issues presented on this appeal are: (1) Is plaintiff totally and permanently disabled within the meaning of the Workmen’s Compensation Act ? (2) Was Mouton receiving wages of $7.50 per day at the time of the injury? (3) Was plaintiff disfigured sufficiently to justify an award under LSA-R.S. 23:1221(4) (p) ? (4) Did the trial judge err in making an award to plaintiff for disfigurement in addition to compensation benefits based on permanent and total disability?
Plaintiff is a 21 year old, unmarried, negro farm laborer. The duties which he customarily performed in his employment included working outside in the sun, using a shovel, plowing, driving tractors and jeeps, repairing farm machinery, working with fertilizers and spraying crops with insecticides. The evidence indicates that he was not a skilled laborer and that he was not equipped by training or experience to perform any other type of work.
On June 6, 1967, Mouton sustained severe burns to various parts of his body in an explosion of butane fuel while he was working as a farm laborer for defendant Habetz. He was given adequate medical treatment, including hospitalization for about 16 days, and he was paid Workmen’s Compensation benefits from the date the injury was received until September 8, 1967. He has not been employed since the date of the accident.
The injury sustained by plaintiff as a result of this accident consisted of first and second degree burns involving 15 to 20 percent of the body surface, but confined to the hands, forearms, face, neck, the upper anterior chest and the upper posterior back. There is a possibility that he sustained third degree burns on the left hand. The burns healed by August 5, 1967, but there was a loss of pigment on the hands, new skin had formed on some of the burned areas and this new skin was tender. Some superficial nerve endings were destroyed and the lymphatic system was damaged, with the result that plaintiff’s hands swell when they are exposed to the sun.
Plaintiff testified that in hot weather the sun causes his hands and face to swell, to start itching and to pain him. In cold weather his left hand gets stiff making it impossible for him to close it, and he has difficulty in holding small objects. His lips have remained in a chapped condition since the burns healed, and he testified that he has had to use vaseline on them every morning. He attempted to feed hay to some cows on one occasion and to mow his lawn on another, about two months after he had been discharged by the doctor, but he testified that within 25 minutes after he started this work his hands and face began itching and his left hand began to swell. His hand remained swollen for a half day on one occasion, he stated, and it was necessary for him to soak it and to use medication in order to obtain relief.
The treating physician, Dr. Murray W. Brown, a general practitioner, is the only medical expert who testified at the trial. He discharged plaintiff on September 8, 1967, as being able to return to work. He stated, however, that he realized when he discharged plaintiff that the latter’s hands were tender, that they would remain tender for some time because new skin had formed, and that the sunlight would cause pain, discomfort and a burning sensation. He felt, however, that the pain would subside to a *365 gradual diminishing degree as he exposed himself to the elements. He conceded that plaintiff’s complaints are compatible with the injuries which he sustained, and he stated, “I felt that he could return to work, but I felt that he would have some pain, discomfort and suffering.” The doctor apparently feels that plaintiff’s disability is only temporary, and that eventually he will recover from his injuries to the point that he will be able to perform all of the duties of his former employment without pain or discomfort. He is unable to state, however, how long a period will be required for this recovery.
With reference to the degree of pain which plaintiff now suffers, Dr. Brown stated that in his opinion it is a “real burning,” that he thought the pain which plaintiff suffered when he tried to work on July 27 was “moderately severe” but that if he worked now the pain would be “less severe and would not be as disabling * * * as painful to him.” We interpret this to mean that in the doctor’s opinion plaintiff would suffer pain and would have some disability now, but it would not be as severe or as disabling as it was on the earlier date.
A Workmen’s Compensation claimant will not be held to be disabled and thus entitled to compensation benefits solely because he suffers some residual pain or discomfort when he attempts to work following a work-connected accident. The residual pain or discomfort in such a circumstance will be considered as being disabling only if it is substantial or appreciable pain. It must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job and thus substantially handicaps him in competing with able-bodied men in the common labor market, or where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that the performance of the work would be deleterious to his health. Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962); Moreau v. Employers Liability Assurance Corp., 180 So.2d 835 (La.App. 3d Cir. 1965); Landry v. Central Excavation Company, 196 So.2d 571 (La.App. 3d Cir. 1967); Banks v. Almond Bros. Lumber & Supply, Inc., 200 So.2d 713 (La.App. 2d Cir. 1967).
On the basis of this evidence, we cannot say that the trial judge erred in concluding that plaintiff is “not able to do his work without itching, burning, pain and discomfort to an extent and to a degree which made it practically impossible for him to efficiently do his work.” We concur in the finding of the trial judge, therefore, that plaintiff was totally disabled within the meaning of the Workmen’s Compensation law at the time of the trial. Since the evidence shows that plaintiff was totally disabled at the time of the trial, and it is uncertain as to when he may recover, the trial judge correctly awarded compensation for the maximum number of weeks prescribed for permanent disability. The employer is protected by the provision in the Workmen’s Compensation statute which permits revision of the judgment after six months, should the disability terminate or lessen. Harris v. Argonaut Insurance Company, 142 So.2d 501 (La.App. 2d Cir. 1962); Andrus v. Great American Insurance Company, 161 So.2d 109 (La.App. 3d Cir. 1964); Comeaux v. Ashy Enterprises, Inc., 195 So. 2d 752 (La.App. 3d Cir. 1967).
Plaintiff testified that he had worked for defendant Habetz for six or seven months, that his agreed wages during all of that time were $7.00 per day, that he was to be paid each week and that he actually received $42.00 per week for working a full week of six days. He stated that he worked for defendant the week before he was injured at that agreed wage, but that for some unknown reason he was paid $8.00 for his work on the day of the accident. He stated, “I don’t know how we got eight dollars, but that’s what he had paid us.”
Plaintiff introduced in evidence four checks from defendant Habetz to plaintiff. Among these checks was one dated May 27, *366 1967, for $24.00 and another dated June 10, 1967, for $8.00. The trial judge assumed that the first check represented plaintiff’s wages for three days, at $8.00 per day, and that the last mentioned check represented payment of plaintiff’s wages for one day, at $8.00. He noted that the evidence was confusing as to whether plaintiff was receiving $7.00 or $8.00 per day, so he awarded compensation based on a wage of $7.50 per day, that being an average of the two questionable figures.
We think the trial judge erred in concluding that plaintiff’s wages were more than $7.00 per day at the time of the accident. In the first place, plaintiff conceded that he had received only $7.00 per day before the date of the accident, so we can see no justification for assuming that the $24.00 check which was issued ten days before the accident represented payment of exactly three days wages. Also, defendant Habetz testified that he was under the impression that plaintiff was being paid $7.00 per day, that Habetz had a few regular employees who received $8.00 per day, but that they were the only ones who received that salary and that plaintiff was not a regular employee. This defendant was unable to recall the specific circumstances which caused him to issue the $8.00 and the $24.00 checks, but he stated that the amounts of the checks do not reflect the daily wages of the employees, that he paid his employees at the end of each week and that he always deducted from each check the advances which the employee had received before payday. He felt certain that each of these checks, both being issued on a Saturday, represented the net amount due each employee at the end of the week after deducting advances.
Our conclusion is that plaintiff was earning $7.00 per day at the time he was injured, that his weekly wages amounted to $42.00 per week, and that he is entitled to compensation at the rate of $27.30 per week.
We think the trial judge also erred in awarding plaintiff compensation benefits for permanent disfigurement, under LSA-R.S. 23:1221(4) (p), in addition to the award for permanent and total disability.
LSA-R.S. 23:1221(4) (p) provides that the court may make an award for serious and permanent disfigurement about the face or head “in cases not falling within any of the provisions already made.” In this instance the injury which plaintiff sustained falls within the provisions of LSA-R.S. 23:1221(2), and thus there can be no additional award for permanent disfigurement. See Bergeron v. New Amsterdam Casualty Company, 243 La. 108, 141 So.2d 832 (1962); Malone, Louisiana Workmen’s Compensation Law and Practice, Sec. 283, p. 362.
For the same reasons we find no merit to plaintiff’s alternate argument that the judgment should be amended to award plaintiff compensation for 300 weeks, based on temporary and total disability, and an additional award of compensation for 100 weeks for permanent disfigurement.
Since we have concluded that plaintiff is not entitled to an additional award for disfigurement, it is unnecessary for us to consider the question of whether the disfigurement in the instant suit is serious or permanent.
For the reasons herein set out, the judgment appealed from is amended and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Bernice Mouton, and against defendants, Philip J. Habetz and Coal Operators Casualty Company, jointly, severally and in solido, for compensation at the rate of $27.30 per week beginning on June 6, 1967, and continuing during plaintiff’s period of disability, not exceeding 400 weeks, plus interest at the rate of five (5%) percent per annum on each unpaid installment from the date such installment became due until paid, and subject to a credit for the compensation payments which were made by de *367 fendants covering the period from June 6, 1967, until September 8, 1967.
It is further ordered, adjudged and decreed that there is reserved to plaintiff, Bernice Mouton, the right to claim additional medical expenses incurred for the treatment of the injuries sustained by him on June 6, 1967, up to the maximum amount allowed by the Workmen’s Compensation Act; that the fee of Dr. Murray Woodford Brown be fixed at $50.00 and taxed as costs; and that defendants be condemned to pay all costs of this suit.
The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.