SAMUEL, Judge.
Plaintiff filed this suit against his employer and its compensation insurer for total and permanent disability benefits under the Louisiana Workmen’s Compensation Act, and for penalties and attorney’s fees.
Following trial on the merits and a partial new trial, there was judgment awarding compensation at the rate of $17.50 per week for 200 weeks, based upon a finding of 15% partial permanent disability (of the upper right extremity), as provided by LSA-R.S. 23:1221(4) (f), (n) and (o).[1] Plaintiff has appealed.
The record reveals the following facts: Appellant, a carpenter, was born Ale Brown and worked under that name for the defendant, Guastella Construction Company.[2] He was raised by a foster mother named Johnson, and for most of his life went by the name of Ale Johnson. On November 15, 1973 he fell from a scaffold while in the employ of Guastella and was immediately *749 taken to Dr. Russel Rawls, the defendant’s physician.
Dr. Rawls thought the injury would be of three or four days duration and that he could return to work at the end of that time. However, appellant did not return to work. In December, 1973 he again saw the doctor with complaints of pain in the upper right extremity. Dr. Rawls then referred him to Dr. Harry Hoerner, an orthopedic specialist, who determined he had a transverse fracture of the right navicular. He was in a cast for five months and the trial court found he had sustained a 15% permanent partial disability of the upper right extremity.
In this court appellant contends: (1) he is entitled to total and permanent disability benefits; (2) alternatively, the amount awarded was incorrectly computed; and (3) he is entitled to penalties and attorney’s fees. His claim for total and permanent disability was and is based upon the asserted fact that he can no longer perform his duties as a carpenter without pain.
Expert medical testimony was given by Drs. Rawls and Hoerner. Dr. Rawls testified on November 15, 1973, the date of the accident, x-rays showed no fractures. He diagnosed the injuries as a multiple contusion involving both wrists, hands, right side, and an abrasion to the right patella. He told appellant to return to work in three or four days. Appellant again was seen on December 12, because he was not improving. The doctor then referred him to an orthopedic specialist, Dr. Hoerner, who thereafter took over treatment. X-rays supplied by Dr. Hoerner revealed a transverse fracture of the right navicular. Based on this evidence, as of December 14, 1973, Dr. Rawls felt he should be able to return to work within three or four weeks.
Dr. Hoerner testified: It is not uncommon for a fracture of this type to fail to show up in the initial x-rays; it could appear in a later x-ray as a result of absorption around the site. A cast was applied to the right wrist and forearm. At the end of five months the fracture had healed and the cast was removed. The contusion of the left wrist healed without the necessity of a cast.
Dr. Hoerner was of the opinion that, although advised to do so by Dr. Rawls, the failure to return to work from November 15, 1973 through December 13, 1973 was consistent with the findings of a fracture, and that pain in the right hand could be expected during that period. Dr. Hoerner told appellant he could return to work in December if assigned to light duties, as he would have to wear a cast for about five months. Johnson made several visits to the doctor over the five month period. When last seen on July 10, 1974 the fracture had completely healed, although there was limitation of motion of a few degrees of dorsi-flexion of the right wrist and a few degrees of volvar flexion. There was no tenderness over the fractured bone, but Johnson complained of aching in the left hand over the ulna border. Examination of the left hand was normal. The doctor’s report of July 22, 1974 rated the disability as 10% to 15% partial of the upper right extremity from the shoulder to the fingertips. Although Dr. Hoerner was aware of the fact that this injury was of more consequence to a carpenter than to another worker whose job would not include hammering, sawing, handling sheetrock, erecting scaffolding, climbing, and the like, at the time of this final examination he concluded Johnson could return to his full duties as a carpenter.
The jurisprudence is to the effect that residual pain or discomfort which an employee suffers following an industrial accident is disabling only if it is sufficiently substantial or intense as to prevent him from carrying out some of the functions of his job, hinders him in the performance of his duties, or makes performance of his work deleterious to his health or dangerous to the safety of others.[3]
The only medical evidence concerning permanent disability is that of Dr. Hoerner. Based upon that evidence the trial court *750 concluded appellant sustained a 15% disability and as of July, 1974 could return to his work as a carpenter.
Appellant argues we are not bound exclusively by the medical evidence and that we are obliged to consider the lay testimony as well, citing the case of Tantillo v. Liberty Mutual Insurance Company, La., 315 So.2d 743, which overruled a long line of cases holding that if there was no conflict in the medical testimony then lay testimony should not be considered. Tantillo holds that while it is generally true medical testimony which is not in conflict cannot be overcome by lay testimony, nevertheless, in each case the totality of evidence, medical and lay, must be considered and examined by the court in making its determination.
Here there is no conflict in the medical testimony; both doctors are of the opinion Johnson can perform his full duties. The only lay testimony regarding whether or not he is able to work without substantial or appreciable pain is that given by Johnson himself.
He testified: He did not return to work although advised to do so because he was in too much pain. When the cast was removed in 1974, he still had pain in the hand. At the time of the trial (October 30, 1974), he had no pain but he experiences pain when he works for a long period of time. He had tried to return to carpentry, doing sheetrock for a neighbor, but was able to do so only for a brief period because of the pain. He is unable to work eight full hours as a carpenter, and can only work for three or four hours before he has to stop.
Proof of disability arising by reason of subjective pain depends to a great extent on the trial court’s evaluation of credibility in the light of medical testimony; and whether such pain is substantial enough to be disabling is a question for the trier of fact.[4] Here it is clear the trial court did not believe appellant’s testimony relative to pain. We note that Johnson made little attempt to determine whether or not he could work without substantial pain and he denied ever having been in a previous accident, or having prior compensation claims, yet on cross examination he “remembered” he had been in a prior accident when his arm had almost been amputated.
Considering both the only lay testimony (Johnson’s) and the medical testimony relative to pain, we cannot say the trial court committed error, nor can we say appellant has proved, by a preponderance of the evidence, that he is permanently and totally disabled.
We agree with appellant’s second contention. The rate of compensation should have been based on a six day week. As stated in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, the established rule is:
“After determining an employee’s daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury.”
It is not contested that appellant earned $4.50 per hour. Therefore, as the trial court found a 15% disability, under the provisions of LSA-R.S. 23:1221(4)(f), (n) and (o );[5] $4.60 per hour x 48 hours = $216 per week; 65% of $216 = $140.40; and 15% of $140.40 = $21.06 per week, as opposed to the $17.50 per week awarded. We amend the judgment accordingly.
Appellant’s final contention is that he should be awarded penalties and attorney’s *751 fees. In this connection, LSA-R.S. 22:658[6] is applicable. It provides for the imposition of penalties and attorney’s fees when the failure to pay workmen’s compensation is “arbitrary, capricious, or without probable cause.” The purpose of the penalty provision is to deter unjustified termination of payments to injured employees during their period of distress.[7]
Appellant argues the insurer was in violation of R.S. 22:658 in that: (1) it failed to start benefits until January 23, 1974, although the accident happened on November 15, 1973; (2) it prematurely terminated payment of benefits on May 19, 1974; and (3) it failed to resume benefits when it received medical evidence that appellant had a'partial permanent disability.
(1) We do not agree that the failure to begin benefits until January 23, 1974 was arbitrary, capricious or without probable cause. That delay was due to confusion created by Johnson’s use of a pseudonym. His attorney made demand on behalf of his client, “A1 Johnson”. Guastella had no employee by that name, because Johnson was working under the name of “Ale Brown”. When the discrepancy was discovered, the insurer prepared a draft for all compensation due from the date of the accident. Johnson was to pick up the draft at the insurer’s office. When he failed to appear for two weeks, the insurer issued a second draft and mailed both of them to the appellant.
(2) Nor do we agree that the benefits, which were paid weekly from their inception until May 19, 1974, were arbitrarily terminated. While appellant complains the termination supposedly was based upon a telephone call from his then attorney advising the insurer he had returned to work (he had not returned to work for Guastella), Doctor Hoerner testified he informed the insurer in May that plaintiff could return to work. Based upon that assurance by the doctor, the insurer did not act arbitrarily or capriciously in terminating benefits at that time.
(3) The first time the insurer was aware appellant had a partial residual disability was on July 24, 1974 when it received a medical report from Dr. Hoerner indicating Johnson had a 10% to 15% partial permanent disability of the upper right extremity. The insurer then knew, or should have known, that appellant was entitled to a minimum of $14.04 [10% disability] for 200 weeks or a maximum of $21.06 [15% disability] for a like period. Since appellant had been paid $1,620, defendant clearly owed him more compensation benefits. While the insurer’s adjuster made several offers to compromise the matter, at no time was any additional amount tendered.
Failure to tender the minimum amount clearly due constitutes arbitrary and capricious refusal to pay,[8] and subjects the insurer to penalties of 12% of the difference between the amount paid and the amount *752 found due, as provided by R.S. 22:658. Accordingly, we award a penalty in the amount of 12% of the difference between the amount of compensation already paid ($1,620) and the amount we now find due ($4,300), together with attorney’s fees in the sum of $1,000, which we conclude is a reasonable fee under all of the circumstances. The penalty and attorney’s fees are to be paid only by the defendant-insurer.[9]
For the reasons assigned, the judgment appealed from is affirmed in part, amended in part, reversed in part and recast to read as follows:
It is ordered that there be judgment in favor of the plaintiff, Al B. Johnson, and against the defendants, Guastella Construction Company and Northern Assurance Company of America, in solido, for workmen’s compensation for a period of 200 weeks, at $21.06 per week, beginning November 15, 1973, together with legal interest on each installment from its due date until paid, subject however to a credit for compensation already paid.
It is further ordered that there be judgment in favor of the plaintiff, Al B. Johnson, and against the defendant, Northern Assurance Company of America, in the full sum of $321.60 (12% of $2,680) with legal interest thereon from July 24, 1974 until paid.
It is further ordered that there be judgment in favor of the plaintiff, AI B. Johnson, and against the defendant, Northern-Assurance Company of America, in the full sum of $1,000 as attorney’s fees.
All costs in both courts are to be paid by both defendants.

AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND RECAST.

. As the accident in suit occurred on November 15, 1973, the following provisions are applicable:
“(4) In the following cases the compensation shall be as follows:
(f) For the loss of an arm, sixty-five per cen-tum of wages during two hundred weeks.
(n) A permanent total loss of the use of a member is equivalent to the amputation of the member.
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.

. Incorrectly named Guastella Construction and Realty Company in the original petition, and subsequently corrected by supplemental petition. Likewise, the correct insurer is Northern Assurance Company, properly named in the judgment.

. Lantier v. Guy Scroggins, Inc., La.App., 223 So.2d 252; Rutherford v. Dixie Concrete, Inc., La.App., 222 So.2d 508; Mouton v. Habetz, La.App., 215 So.2d 363; Jones v. Woodson *750 Construction Company, La.App., 213 So.2d 151; Landry v. Central Excavation Company, La.App., 196 So.2d 571; Holmes v. Morville Plantation, Inc., La.App., 314 So.2d 752; Dupard v. M & C Construction Co., La.App., 312 So.2d 660.

. Holmes v. Morville Plantation, Inc.; Dupard v. M & C Construction Co., Footnote 3.

. Footnote 1.

.“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. . . . ”

. Guillory v. Travelers Insurance Company, La., 294 So.2d 215; Poindexter v. South Coast Corporation, La.App., 204 So.2d 615.

. See Fruge v. Pacific Employers Insurance Company, 226 La. 530; 76 So.2d 719; Guillory v. Travelers Insurance Company, Footnote 7; Breen v. Bituminous Casualty Company, La. App., 249 So.2d 338; Berry v. Higgins, Inc., La.App., 136 So.2d 170; Fruge v. Hub City Iron Works, Inc., La.App., 131 So.2d 593.

. Lethermon v. American Insurance Co., La.App., 129 So.2d 507; Bassemier v. W. S. Young Construction Co., La.App., 110 So.2d 766.