336 So.2d 1002 (1976)
James A. CARTER, Plaintiff and Appellant,
v.
ROY O. MARTIN INDUSTRIES, INC., Defendant and Appellee.
No. 5541.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
Rehearing Denied September 20, 1976.
*1003 Bolen, Halcomb, Bolton & Erwin by James A. Bolen, Jr., Alexandria, Smith, Taliaferro, Seibert & Boothe by J. W. Seibert, III, Jonesville, for plaintiff and appellant.
Gold, Hall, Hammill & Little by Eugene J. Sues, Alexandria, for defendant and appellee.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant, James A. Carter, brought this action against his former employer, Roy O. Martin Industries, Inc., defendant-appellee, to recover benefits under the Workmen's Compensation Act, for total and permanent disability, and penalties and attorney's fees. The District Court awarded plaintiff benefits for temporary total disability and penalties and attorney's fees. Plaintiff has appealed seeking a judgment declaring him totally and permanently disabled and increasing his attorney's fees.[1] We affirm.
Plaintiff was employed by defendant, Roy O. Martin Industries, Inc., in the capacity of a welder. All parties agree that he was injured in the course and scope of his employment on October 13, 1973, on which date he fractured his left wrist, left elbow, and bruised his left knee. Plaintiff was paid compensation benefits for approximately three weeks, after which time he returned to work with his left arm in a cast. Mr. Carter continued in his job as welder for the defendant until July 29, 1974, at which time he was terminated for reasons unrelated to his prior accident.
Plaintiff's basic contention is that although he is able to perform the duties required by his employment, he suffers from considerable pain in so doing as a result of his accident.
Plaintiff was examined and treated a number of times following his injury by Dr. R. J. Beurlot, Jr., an orthopaedic surgeon in Alexandria, Louisiana. Doctor Beurlot initially examined Mr. Carter on November 6, 1973, and discovered a break in the small bone of the left wrist and a radial head fracture of the left elbow. Doctor Beurlot treated Mr. Carter for the fractures. On January 4, 1974, he found the wrist and the contusion to the left knee improved, but discovered that the patient  still suffered from discomfort in the injured elbow. After an examination of February 13, 1974, Doctor Beurlot determined that Mr. Carter's only area of discomfort was in the left elbow. On March 27, 1974, the physician discharged plaintiff to return to his regular duties at Roy O. Martin Industries.
Doctor Beurlot next examined Mr. Carter on August 13, 1974, and found that the plaintiff complained of continued pain in the left elbow, wrist, and knee. His x-ray examination showed good position and alignment of the radial head fracture of the *1004 elbow, and the x-rays of the left knee and left wrist were negative. At that time Doctor Beurlot diagnosed the source of plaintiff's complaints as residuals of the radial head fracture of the elbow. He found no evidence of chondromalacia and concluded that plaintiff suffered from no disability relative to his knee. On the date of his final examination Doctor Beurlot was of the opinion that plaintiff should be able to resume all of his former work duties. This physician felt that if any chondromalacia had been present in plaintiff's left knee as a result of the accident some symptom of the injury should have manifested itself in the period of nearly a year in which he treated plaintiff following the accident.
Mr. Carter was next examined and treated by Dr. J. T. Weiss, an orthopaedist in Alexandria, Louisiana. Doctor Weiss examined plaintiff on October 25, 1974, and had an arthrogram performed on him on November 11, 1974. Doctor Weiss did not testify, but his reports were admitted into evidence at the trial. In his report of November 19, 1974, the physician concluded as follows:
". . . The arthrogram was negative and showed no abnormalities. This would mean that most likely there are no torn menisci and the anterior cruciate ligaments should be intact. Mild chondromalacia of the condyles would not show on an arthrogram.
My final impression in regard to the left knee is that he could have some mild chondromalacia of the medial femoral condyle but this could not be diagnosed except through exploration, in other words an arthrotomy of the knee would have to be carried out for visualization. The left elbow percent of physical impairment and loss of physical function would certainly be very minimal and certainly less than five percent . . ."
Plaintiff was finally examined by Dr. Edwin Caldwell Simonton, an orthopaedic surgeon in Shreveport, Louisiana, who testified by deposition. Doctor Simonton saw Mr. Carter on May 7, 1975, and again on October 29, 1975, at the request of plaintiff's attorney. The physician was of the opinion that plaintiff suffered from a radial head fracture of the left elbow which was healing and found some chondromalacia of the left patella, which he felt was probably traumatic in origin. Doctor Simonton concluded that plaintiff's symptoms were causally related to his accident of October 13, 1973. He felt that excessive strenuous activity of the left knee and elbow would cause discomfort and pain to Mr. Carter in the future. However, Doctor Simonton was of the opinion that at the time of his last examination plaintiff was physically able to return to the type of employment in which he was engaged at the time of his accident.
The medical evidence presented in this litigation is obviously inconclusive regarding the extent, if any, of plaintiff's disability. Several lay witnesses also testified.
Marion Ansel Cooley, plaintiff's son-in-law, testified that he assisted Mr. Carter in the process of building a five room dwelling in which the latter now resides. This house was built by plaintiff and Mr. Cooley after the accident. The witness testified that plaintiff had difficulty with the work and complained of pains in his left leg and elbow and was forced to stop and rest from time to time.
Plaintiff's wife also assisted him in the construction of the house and testified that Mr. Carter was in much pain and limped after the accident. She also stated that he experienced difficulty in the task of constructing the house.
Plaintiff testified that although he performed essentially the same job functions after his accident he experienced pain in attempting to carry out his duties subsequent to his injury. He stated that he complained to his shop foreman about pain several times. However, Mr. Carter admitted that although he was allegedly working in pain he consulted no physicians between the months of April and August, 1974, nor did he attempt to see a doctor between August and October of that year. After his termination by his employer he was offered *1005 another welding job which he stated he refused solely because it involved working with creosote, with which he was incompatible.
Several of plaintiff's supervisors and co-workers testified. Marvin Joseph Broussard, shop foreman for Roy O. Martin Industries, stated that he recalled instances in which plaintiff complained of his elbow during the period in which a cast was on the arm. However, the witness could not remember any complaints made by Mr. Carter after the cast was removed. He further stated that to his knowledge plaintiff had no unusual difficulty in performing his job. James R. Satcher, a former co-worker of plaintiff's, testified that plaintiff did complain about pains in his leg and arm but also could not recall any times in which Mr. Carter complained of pain after his cast was removed. Allen J. Mayeux, also a welder for Roy O. Martin Industries, stated that to the best of his knowledge plaintiff complained once in a while about pains in his arm and also stated that his knee bothered him on a couple of occasions. Mr. Mayeux testified that plaintiff did not favor his left arm or leg. Mr. Melvin O. Cody, the plant superintendent for Roy O. Martin Industries, testified that plaintiff's job required that he weld outside the welding shop from time to time but that the welders were not required to carry their equipment up onto scaffolds and other high places.
Louisiana's "work-in-pain" rule has been well stated in the case of Jones v. Woodson Construction Company, Inc., 213 So.2d 151 (La.App. 3rd Cir. 1968):
"A compensation claimant will not be held to be disabled and thus entitled to compensation benefits solely because he suffers some residual pain or discomfort when he attempts to work following an industrial accident. The residual pain or discomfort which he suffers will be considered as being disabling only if it is substantial enough or sufficiently intense that it either prevents the worker from carrying out some of the functions of his job, or where the pain is not so intense as to hinder the worker's fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962); Taylor v. Meeker Sugar Cooperative, Inc., 177 So.2d 140 (La.App. 3rd Cir. 1965); Price v. Walgreen's Company, 204 So.2d 67 (La.App. 4th Cir. 1967);" (Further numerous cases omitted.)
In order to be disabling a workmen's compensation claimant's pain must be substantial. Reeves v. Russo, 302 So.2d 332 (La.App. 1st Cir. 1974); Grigsby v. Argonaut Insurance Company, 297 So.2d 698 (La. App. 1st Cir. 1974); Falgoust v. Jefferson Parish School Board, 294 So.2d 594 (La.App. 4th Cir. 1974), writ refused, La., 296 So.2d 836.
Our law is well settled for the proposition that the plaintiff in a workmen's compensation suit bears the burden of proving the facts relative to his disability by a preponderance of the evidence. Alfred v. Travelers Insurance Company, 322 So.2d 872 (La.App. 3rd Cir. 1975); Bryant v. Magnolia Garment Company, Inc., 307 So.2d 395 (La.App. 2nd Cir. 1975); Lantier v. Guy Scroggins, Inc., 223 So.2d 252 (La.App. 3rd Cir. 1969).
The determination of whether pain is substantial enough to be disabling to a workmen's compensation claimant is a question of fact. Holmes v. Morville Plantation, Inc., 314 So.2d 752 (La.App. 4th Cir. 1975); Dupard v. M & C Construction Company, 312 So.2d 660 (La.App. 4th Cir. 1975).
In his written reasons for judgment the District Judge stated:
"The plaintiff contends that he worked in constant pain from the date of the accident until his discharge. However, the Court is of the opinion that the evidence does not sustain this position. Mr. Carter's family all testified that he worked in pain, however, the defendant summoned numerous co-employees of the plaintiff, none of whom could recall his making any complaints to them. Some of them did recall that he complained of *1006 pain during the time that his arm was in a cast, however, none of them could recall any complaints of pain made by Mr. Carter after March 27, 1974. The Court is of the opinion that the evidence fails to establish this point by a preponderance, and, accordingly, on the point judgment is rendered for the defendant."
After a careful review of the evidence we are of the opinion that a reasonable basis exists therein to support the trial judge's finding that plaintiff failed to prove by a preponderance of the evidence that he was forced to work in such pain as to render him disabled. See Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The District Judge awarded plaintiff the sum of $1,500.00 as attorney's fees pursuant to LSA-R.S. 23:1201.2. Plaintiff contends that said award is inadequate and should be increased.
In determining the amount of penalties and attorney's fees to be awarded in workmen's compensation cases great discretion is afforded the trial court. See Tullier v. Ocean Accident and Guarantee Corporation, 141 So.2d 521 (La.App. 4th Cir. 1962), and Whatley v. Lummus Company, 243 So.2d 922 (La.App. 3rd Cir. 1970) (wherein we also affirmed the trial court's award of $1,500.00 for attorney's fees in a workmen's compensation case.)
Viewing the $1,500.00 award of attorney's fees in the factual context of this case and considering the broad discretion which is afforded the district judge in such matters, we find that said award is neither inadequate nor excessive and hereby affirm same.
For the above and foregoing reasons the judgment of the district court is affirmed. Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The trial judge awarded plaintiff compensation benefits to cover the period from October 13, 1973, until March 27, 1974, with credit for benefits already paid, and $1,500.00 as attorney's fees. Defendant-appellee has neither appealed nor answered the appeal.