445 So.2d 1258 (1984)
Michael R. THOMAS, Plaintiff-Appellee,
v.
GREGORY & COOK, INC., et al., Defendants-Appellants.
No. 83-423.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
*1259 Randall K. Theunissen, of Allen, Gooch & Bourgeois, Lafayette, for defendant-appellant.
Brinkhaus, Dauzat & Falgoust, William A. Brinkhaus and Peter F. Caviness, Opelousas, for plaintiff-appellee.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
Michael R. Thomas (plaintiff) brought this workmen's compensation action to recover disability benefits, medical expenses, and penalties and attorney's fees. Named defendants are Gregory & Cook, Inc. (Gregory), plaintiff's employer at the time he was injured, and its workmen's compensation insurer, North River Insurance Company[1].
*1260 After trial on the merits, the trial court rendered judgment in favor of plaintiff, finding him to be partially disabled[2] and awarding him disability benefits in accordance with the provisions of LSA-R.S. 23:1221(3), viz, 450 weeks, subject to applicable credits. In addition, the trial court ordered defendants to pay plaintiff a penalty of 12% on all compensation benefits found to be due and unpaid, and attorney's fees in the amount of $2,500.
Defendants appeal and raise the following issues:
(1) Whether the trial court committed manifest error in finding plaintiff to be partially disabled;
(2) Whether the trial court committed manifest error in finding that defendants had acted arbitrarily, capriciously, and without probable cause in terminating the payment of disability benefits to plaintiff.
Plaintiff has answered the appeal and seeks an increase in the amount of attorney's fees awarded to him.

FACTS
There is no dispute that plaintiff was injured in a work-related accident on May 6, 1980, while employed by Gregory. On that date, plaintiff was working as a laborer on a pipeline being constructed by Gregory, and injured his left knee when he jumped from some pipe to the ground below. He was initially taken to a hospital in New Iberia for treatment and then transferred to Opelousas General Hospital.

EXTENT OF PLAINTIFF'S ALLEGED DISABILITY
Defendants contend that the trial court committed manifest error in finding plaintiff to be partially disabled. They argue that the medical evidence shows that he is not.
Upon reaching Opelousas, plaintiff was treated by Dr. Robert L. Bordelon. After examining and x-raying plaintiff's knee, Dr. Bordelon diagnosed him as suffering from a knee strain. He then immobilized plaintiff's knee, placed him on medication for pain and swelling, gave him some crutches, and told him to report back in a couple of days. The next time plaintiff saw Dr. Bordelon, he was complaining of continued difficulty with his knee and was told that he had three choices, i.e., he could go back to work, wait, or have an arthroscopic examination. Dr. Bordelon advised plaintiff to wait as he was undergoing physical therapy. On June 5, 1980, plaintiff saw Dr. Bordelon for the last time and was again told that he had the three choices noted above, although Dr. Bordelon informed him that he didn't believe he could return to work. At this time, plaintiff decided to have the arthroscopy performed and Dr. Bordelon scheduled him for the examination, and surgery if necessary. Plaintiff never returned to see Dr. Bordelon, whose final diagnosis was a probable tear of cartilage in the knee.
Plaintiff was treated next by Dr. Frederick L. Mayer, an orthopedic surgeon, on June 24, 1980. After examining his knee and conducting certain tests on it, Dr. Mayer concluded that plaintiff was suffering from a tear of the medial meniscus (a cartilage located in the knee). He was again scheduled for arthroscopy (which confirmed Dr. Mayer's diagnosis), and underwent surgery to excise the torn cartilage fragment. Plaintiff was then discharged from the hospital and followed by Dr. Mayer on a regular basis until November 10, 1980, at which time he was discharged from Dr. Mayer's care.
The claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Bordelon v. Ranger Insurance Co., 413 So.2d 962 (La.App. 3 Cir. 1982), writ denied, 420 So.2d 448 (La.1982); Elie v. St. Paul Fire & Marine Ins. Co., 408 So.2d 297 (La.App. 3 Cir.1981); Augustine v. Courtney Construction Company of Alexandria, Inc., 405 So.2d 579 (La.App. 3 Cir.1981), writ denied, 407 So.2d 735 (La. 1981). The issue of whether or not he has carried his burden must be determined by examining the totality of the evidence, including *1261 both lay and medical testimony. Elie v. St. Paul Fire & Marine Insurance Co., supra; Augustine v. Courtney Construction Co. of Alexandria, Inc., supra; Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977).
Plaintiff testified that he had graduated from high school. He has worked on a survey crew and performed light construction work. In addition, plaintiff worked as a pipeline laborer for Curran Houston, Inc., before going to work for Gregory, and as a warehouseman at his mother's Western Auto Store in Opelousas. On the date of trial, plaintiff was twenty-four years old.
Plaintiff further testified that his knee was still very weak at the time that he was discharged from Dr. Mayer's care. He stated that it was painful to stand on and that it would give out on him, making it impossible for him to perform the tasks of a pipeline laborer. He noted that such work was done in mud most of the time, and that he was occasionally required to climb on and off of machinery. On August 28, 1981, plaintiff returned to work with Gregory. He stated that his knee had not improved at this time, and that he injured his right knee the second day he was on the job[3].
Plaintiff introduced in evidence the deposition of Dr. Mayer to which was attached the discharge summary he sent to defendants on November 10, 1980. That summary provides, in pertinent part, that:
"Examination reveals no swelling or effusion or increased heat. There is no evidence of any varus or valgus laxity. He has a very minimal amount of anterior laxity which is secondary to the sprain of the anterior cruciate ligament. The patient has full active range of motion of the knee joint.
I feel that he has reached a maximum plateau of rehabilitation insofar as he does not require further supervised follow-up care. I feel that the patient has a 10% partial permanent physical impairment of his entire left lower extremity based upon surgical removal of the medical semilunar cartilage, no complications and partial tear of the anterior cruciate. I feel that this man may be discharged and feel that he is fit to return to his previous employment in the same capacity as prior to his injury." (Emphasis ours.)
On January 12, 1981, Dr. Mayer examined plaintiff once again. At that time, plaintiff told him that, "... his left knee was still giving way at times, especially when he bends or twists it". Dr. Mayer stated that this was occurring, "... probably due to the fact that he hadn't quite rehabilitated or gained the full strength back in his quadriceps, the muscles of his thigh". Dr. Mayer noted that plaintiff had not regained normal strength in his left leg at the time he was discharged. He explained that: "Usually we discontinue the therapy when a patient has eighty percent of the strength in his so-called normal leg." Dr. Mayer could find nothing objectively wrong with plaintiff's left knee on this date.
On December 29, 1980, plaintiff was examined by Dr. George P. Schneider, an orthopedic surgeon, for evaluation[4]. Dr. Schneider found some atrophy present in the left leg as compared to the right. Further, the tone of the left quadriceps muscle on comparison with the right was moderately decreased, and slight crepitation or grinding was noted on active motion of the knee. Dr. Schneider was of the opinion that plaintiff was recovering from an injury *1262 to the left knee, and was progressing very satisfactorily, but he recommended that he undergo a routine of intensive physical therapy to aid in restoring further strength to the muscles of the left thigh and calf. He felt that plaintiff would need approximately eight weeks of physical therapy before he could resume his employment, and was of the opinion that plaintiff could not return to work as a heavy laborer. He was also of the opinion that the injury to plaintiff's right knee in the second accident resulted from the fact that plaintiff was favoring his left leg. He did find that plaintiff had a 10% permanent partial disability of the left leg.
Finally, on March 26, 1981, plaintiff was examined for evaluation by Dr. James R. Lafleur, an orthopedic surgeon. He too assigned plaintiff a 10% permanent partial disability of the left leg. At the time of his examination, Dr. Lafleur was of the opinion that plaintiff could not return to his job as a pipeline laborer. Dr. Lafleur stated that: "... at the time that I saw him the knee was at risk, implying that it was not a strong knee and any exertion on it would predispose him to further injury of the affected knee and/or other body parts." Dr. Lafleur was able to visually detect the presence of atrophy in plaintiff's left leg. He believed that extensive physical therapy was indicated.
In order to recover benefits under LSA-R.S. 23:1221(3) (as it read at the time plaintiff was injured), plaintiff must show that his injury prevented him from performing the "duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience". Stracener v. United States Fidelity & Guaranty Company, 420 So.2d 1101 (La.1982).
Based on the evidence noted above, we conclude that plaintiff's injury prevents him from performing the duties in which he was engaged when injured as well as those for which he is fitted by education, training, and experience. Hence, the trial court correctly found that he is partially disabled within the meaning of LSA-R.S. 23:1221(3), and entitled to recover disability benefits under this provision.

PENALTIES AND ATTORNEY'S FEES
Defendants contend that the trial court committed manifest error in awarding plaintiff penalties and attorney's fees. They argue that their actions in terminating the payment of disability benefits to him were not arbitrary, capricious, or without probable cause. They note that on November 18, 1980, an offer was made to plaintiff to settle his claim against them. Under the terms of that offer, plaintiff was to receive a lump sum payment of $6,468.
The evidence shows that the above mentioned offer to settle was made to plaintiff by defendants. However, plaintiff rejected this offer by making a counteroffer in which he agreed to accept $17,500 in settlement of his claim. Defendants refused to accept this counteroffer.
Robert L. Wallace testified that he is an employee of Gray & Company, Inc., defendants' adjusting agency. He handled plaintiff's workmen's compensation claim. He stated that he did receive a letter from plaintiff's attorney, demanding that plaintiff's disability benefit payments be brought up to date, and admitted that Gray & Company, Inc. had received Dr. Mayer's discharge summary in which he opined that plaintiff had, "... a 10% partial permanent physical impairment of his entire left lower extremity ...". However, Wallace testified that defendant failed to pay plaintiff any disability benefits after November 18, 1980, and that no more payments had been made to him up to the date of trial. Finally, Wallace stated that the offer made to plaintiff was for the total settlement of his potential claim.
It is now well established that if an employee has a partial disability, the insurer is not justified to terminate all compensation. If the insurer arbitrarily withholds compensation for partial disability, the insurer may be assessed penalties and attorney's fees. See Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977), and authorities cited therein. *1263 Further, it has been held that the tender, in full settlement of plaintiff's potential claim, of a greater amount than the amount later judicially determined to be due cannot serve to relieve the insurer from the assessment of penalties for failure to pay a lower amount undoubtedly due, when the tender was conditioned upon plaintiff's releasing a right to claim a greater sum. See Lopez v. Commercial Union Assurance Companies, 353 So.2d 431 (La.App. 4 Cir. 1977), and authorities cited therein.
In the case sub judice, defendants did tender a greater amount to plaintiff than he would have been entitled to under the schedule of benefits (see LSA-R.S. 23:1221(4)(h)) for the undisputed 10% partial permanent physical impairment of his left leg. However, defendants failed to reinstitute the payment of weekly disability benefits to plaintiff (under LSA-R.S. 23:1221(4)(h)) after he rejected their settlement offer, which defendants admit was made in full settlement of plaintiff's potential claim against them. Thus, the trial court correctly found that defendants had acted arbitrarily, capriciously, and without probable cause in terminating the payment of disability benefits to plaintiff.

ANSWER TO APPEAL
As noted above, plaintiff has answered the appeal, seeking to increase the trial court's award for attorney's fees from $2,500 to $5,000 and for an additional award for the time, effort, and expenses expended by counsel in handling this appeal.
The factors usually taken into account in determining attorney's fees in workmen's compensation cases are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). In determining the amount of penalties and attorney's fees to be awarded in workmen's compensation cases, great discretion is afforded the trial court. Carter v. Roy O. Martin Industries, Inc., 336 So.2d 1002 (La.App. 3 Cir.1976); Jackson v. Maloney Trucking & Storage, Inc., 424 So.2d 1037 (La.App. 4 Cir.1982).
The record shows that plaintiff's attorney participated in the taking of five depositions: one taken at his office in Opelousas; two taken in physicians' offices located in Opelousas; one taken in a physician's office located in Lafayette, and the last taken in a physician's office located in Lake Charles. Thus, plaintiff's attorney had to travel to participate in the taking of four depositions in addition to the time spent preparing for and actually taking them. Further, plaintiff's attorney participated in the trial (which lasted approximately half a day), filed post-trial memoranda, and filed various pleadings.
It is our opinion that the trial court erred in awarding plaintiff only $2,500 for attorney's fees. We will increase that award to $4,000. In addition, we will award plaintiff $500 for attorney's fees for this appeal, a total award of $4,500 for attorney's fees.

DECREE
For the above and foregoing reasons:
IT IS ORDERED, ADJUDGED AND DECREED that:
(1) that portion of the judgment of the trial court awarding $2,500 attorney's fees is hereby amended to increase that award to $4,000;
(2) plaintiff is awarded the amount of $500 for attorney's fees in connection with this appeal; and,
(3) in all other respects, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against defendants-appellants.
AFFIRMED AS AMENDED.
NOTES
[1] Prior to trial on the merits, the parties stipulated that Gray & Company, Inc., originally named as a defendant to this action, would be deleted as a defendant since it is not an insurance company, and that in its place would be substituted North River Insurance Company.
[2] The judgment incorrectly refers to plaintiff's disability as permanent partial disability.
[3] In this second accident, plaintiff was working on a crane when it began to topple over while handling a section of pipe. He injured his right knee when he jumped from the crane because he, "... favored that left leg at that time because it was very weak". Plaintiff was receiving disability benefits for the injuries sustained in this second accident at the time of trial.
[4] This Court is well aware of the rule that the testimony of treating physicians is usually accorded greater weight than that of specialists who are employed merely to evaluate the claimant. See Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3 Cir.1981), writ denied, 412 So.2d 85 (La.1982), and authorities cited therein. However, this rule does not require a court to completely disregard the testimony of physicians employed solely for evaluation.