578 So.2d 209 (1991)
Donald POLK, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY INS. COMPANY, et al., Defendants-Appellants.
No. 89-1140.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Antoon & Dalrymple, Joseph Dalrymple, Alexandria, for plaintiff-appellee.
Stafford, Stewart & Potter, Bradley Gadel, Alexandria, for defendants-appellants.
*210 Before GUIDRY, FORET and YELVERTON, JJ.
FORET, Judge.
Plaintiff-appellee, Donald Polk (Polk), instituted this workers' compensation suit against Donald Parker (Parker) and his workers' compensation insurer, United States Fidelity & Guaranty Insurance Company (USF & G), seeking disability benefits and penalties and attorney's fees for their non-payment of workers' compensation benefits. Judgment was rendered in favor of Polk and against Parker and USF & G, declaring plaintiff to be totally and permanently disabled and awarding Polk penalties and an attorney's fee of $9,000. Parker and USF & G appeal.
In his reasons for judgment, the trial judge succinctly stated the facts of the on-the-job accident, and the resulting injuries to Polk. He said:
"On or about May 6, 1988, while in the course and scope of his employment with Donald Parker, plaintiff suffered an accidental injury to his eyes when a pressure valve on a sprayer malfunctioned causing herbicide to blow into plaintiff's face and eyes. The accident has left plaintiff with an eye condition called dry eye syndrome. Although plaintiff's visual acuity has returned to normal, plaintiff suffers from headaches, inflammation and irritation of the eyes. Plaintiff testified that when he attempted to go back to work his eyes started swelling, hurting and drying out. He said that he worked until his eyes got infected. His eyes have a dry scratchy sensation all the time and he is required to apply eye medication frequently. He stated that he does not sleep well, that he has no energy, and that his eyes are dry, sore and scratchy when he wakes up in the morning. He is still seeing a physician for his eye condition. As the result of his eye problems he suffers from depression."
Defendants-appellants assign the following as manifest errors of the trial judge:
(1) The trial judge erred in finding Polk totally and permanently disabled; and
(2) The trial judge erred in finding that the denial of benefits by USF & G and Parker was arbitrary, capricious, or without probable cause and in awarding statutory penalties and attorney's fees to Polk.

TOTAL AND PERMANENT DISABILITY
The law mandates that a court declare a workers' compensation claimant totally and permanently disabled only where:
"the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment."
La.R.S. 23:1221(2)(c).
In Thum v. MRO Services Co., Inc., 430 So.2d 1298 (La.App. 1 Cir.1983), writ denied, 434 So.2d 1092 (La.1983), the court was confronted with a case presenting a similar factual situation. The workers' compensation claimant was exposed to phosgene gas. As a result, plaintiff coughed up black phlegm, had fever, skin rashes, insomnia, and prostate and kidney problems, lost forty pounds, and had "anxiety attacks" characterized by total unreality, sweaty palms, heart palpitations, sharp pains in the lower back, and a feeling that death was imminent. Plaintiff's treating psychiatrist diagnosed plaintiff as experiencing a stress disorder secondary to organic factors and a traumatic incident. (The trauma was the phosgene exposure, and the organic factors were the symptoms plaintiff experienced as a result of that exposure.) The psychiatrist opined that plaintiff was disabled and unable to work due to his lack of concentration, nervousness, irritability, and inability to think. The First Circuit affirmed the trial court's judgment that plaintiff was totally and permanently *211 disabled. The Louisiana Supreme Court denied writs.
In this case, Polk was a 52-year-old who had not finished the tenth grade in high school. His only work experience was that of heavy labor. During the course and scope of his employment as an employee of in-ground maintenance, his eyes were exposed to a chemical herbicide. As a result of that exposure, plaintiff's eyes became infected, inflamed, and irritated. Polk suffers from loss of sleep, loss of memory, lack of concentration, inability to read continuously for more than ten minutes, and photophobia. Polk also developed a dry eye syndrome, for which constant and consistent use of lubricants (eye drops and ointments) is required. Polk is under medication to alleviate his nervousness, depression, and insomnia. The burning sensation in his eyes is exacerbated by wind, low humidity, and macroscopic and/or microscopic pollutants. Polk's heart rate has increased and his blood pressure was elevated as a result of the exposure.
Dr. David Carlton, an expert in general medicine, who treated Polk from August 1, 1988 until August 30, 1988, and on March 24, 1988, diagnosed plaintiff as suffering from depression. The doctor prescribed an anti-depressant. He attributed plaintiff's rapid heartbeat and elevated blood pressure to plaintiff's anxiety over his on-thejob accident, and his resulting inability to perform what he formerly could do.
Dr. Daniel Lonowski, a licensed clinical psychologist accepted by the court as an expert in the field of clinical psychology, testified on behalf of plaintiff. He opines that plaintiff possesses a work ethic. He states: "[h]e has incorporated a work ethic into his self-concept...." The doctor explained that plaintiff's ego is heavily invested with being able to be gainfully employed, and, when not gainfully employed, plaintiff's ego suffers a severe blow. The doctor believes that plaintiff suffers from a reactive depressive state/situational adjustment disturbance, and further that:
"In this examiner's view, in combination with the physical limitations that he presents with and the reactive depressive state/situational adjustment disturbance, Mr. Polk is effectively precluded from gainful employment. He would not be expected to be able to maintain adequate persistence or pace within a work setting. Supervisory demands would be unable to be consistently tolerated. His concentration and memory may also provide difficulties especially in operating equipment that may be dangerous. His frustration tolerance would be particularly low. Additionally, his overall physical status and tendency to become easily fatigued would tend to compromise his work abilities."
We find no error in the trial judge's determination that plaintiff is totally and permanently disabled and, accordingly, affirm that judgment.
ARBITRARY AND CAPRICIOUS BEHAVIOR
"An employer or its insurer shall be liable for reasonable attorneys fees for terminating benefits when the action is arbitrary, capricious, or without probable cause. LSA-R.S. 23:1201.2; Lamette v. Morrison Assur. Co., 461 So.2d 351 (La. App. 2d Cir.1984). Whether or not a termination of or refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Scott v. Sears, Roebuck and Co., 406 So.2d 701 (La.App. 2d Cir.1981); Edwards v. Hartford Ins. Co., 445 So.2d 499 (La.App. 2d Cir.1984). If any installment of compensation without an order is not paid within the time provided in R.S. 23:1201, there shall be added to such unpaid installment a penalty of an amount equal to 12% thereof, unless the nonpayment results from conditions over which the employer or his insurer had no control or unless the employee's rights to such benefits have been `reasonably controverted' by the employer or his insurer. R.S. 23:1201 E; Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2d Cir. *212 1987). The claimant's right to such benefits will be deemed to have been reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Green v. Jackson Rapid Delivery Service, supra. The trial judge's determination as to penalties and attorneys fees is ultimately one of fact and his finding should not be disturbed on appeal absent manifest error. Lamette v. Morrison Assur. Co., supra; Harrison v. Chicago Mill and Lumber Co., 446 So.2d 843 (La.App. 2d Cir. 1984)."
Brown v. Manville Forest Products Corp., 565 So.2d 496, 501-502 (La.App. 2 Cir.1990), writ denied, 567 So.2d 1127 (La.1990).
USF & G argues that its discontinuance to pay workers' compensation benefits to Polk was not arbitrary and/or capricious, or without probable cause. It maintains that its discontinuation was based upon the medical evidence supplied to it by Polk. It asserts that the medical evidence does not reveal objective signs of Polk's disability. Dr. Alan Smith, plaintiff's treating ophthalmologist, opined:
"Prognosis for the patient as far as visual acuity and field of vision is excellent; however, the patient will probably be inconvenienced by the dry eye syndrome in years to come. This may improve with further healing of the scarred conjunctiva but the likelihood of this is poor as dry eye syndrome tends to worsen with age. The marginal blepharitis should be controllable by frequent lid scrubs and as I mentioned before, this problem can not be directly attributed to his chemical burn as this is a common problem, unrelated to injury. The patient's iritis, I do feel is related to the burn and the iritis has remained chronic since the acute phase of his injury. Although, I feel that it may be improving slightly and is more easily controlled with pharmacologically milder agents than originally."
USF & G also asserts that plaintiff sought employment.
We believe that USF & G's termination of workers' compensation benefits to Polk was based upon factors within its control. It knew of the disabling depressive anxiety reaction of Polk to the on-the-job accident. In addition to the deposition and correspondence of Dr. Alan Smith, it possessed (or its attorney was notified by) the depositions of Dr. David Carlton and Dr. Daniel Lonowski. Its own psychologist witness, Dr. Milton R. Rhea, testified that the tests which he conducted on Polk revealed the same personality profile as did Dr. Lonowski. Dr. Rhea stated that plaintiff complained of pain, insomnia, and nervousness. The doctor spoke of Polk's work ethic, but he was of the opinion that that characteristic in the personality of Polk would not prevent him from employability.
USF & G employed two vocational consultants, Lionel Bordelon and Mark Williams, in an attempt to find suitable employment for Polk. Both consultants were notified of Polk's dry-eye syndrome. Both knew that Polk was required to frequently lubricate his eyes so that his vision would not be adversely affected. Both consultants knew of Polk's work history and physical limitations. They knew Polk was to avoid outdoor work. However, neither consultant was made aware of Polk's treatment by a psychologist and the psychologist's diagnosis of a reactive depressant state/situational adjustment disturbance. Accordingly, we believe that the job market survey used by Williams was defective, and that the results of that test are invalid.
We find that the trial judge did not abuse his discretion in finding USF & G arbitrary and capricious in terminating workers' compensation benefits and in awarding penalties and attorney's fees to Polk for that behavior.

AMOUNT OF ATTORNEY'S FEES
USF & G originally argued that it was not arbitrary or capricious or without probable cause in its termination of workers' compensation benefits to Polk. Alternatively, it argues that, even if it were found to be arbitrary and capricious, the *213 award of $9,000 in attorney's fees is excessive.
"The factors usually taken into account in determining attorney's fees in workmen's compensation cases are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). In determining the amount of penalties and attorney's fees to be awarded in workmen's compensation cases, great discretion is afforded the trial court. Carter v. Roy O. Martin Industries, Inc., 336 So.2d 1002 (La.App. 3 Cir.1976); Jackson v. Maloney Trucking & Storage, Inc., 424 So.2d 1037 (La. App. 4 Cir.1982)."
Thomas v. Gregory & Cook, Inc., 445 So.2d 1258, 1263 (La.App. 3 Cir.1984).
Plaintiff's counsel actively participated in this case. He filed a workers' compensation claim with the Office of Workers' Compensation. After obtaining the recommendations of that office, with which he disagreed, he prepared and filed this lawsuit. He also filed a first supplemental and amending petition and a second supplemental and amending petition. He prepared for and attended the depositions of two medical physicians, both of which were held on different days. He also prepared for and attended the depositions of two psychologists, both of which were held on different days. He also prepared for and attended the deposition of a minister, which was out of the municipality where his law office was located. He further prepared for and attended the trial of these proceedings, which lasted about half a day. He also wrote an appellate brief.
In the Thomas case, supra, this Court increased the award of attorney's fees from $2,500 to $4,000, and awarded an additional $500 of attorney's fees for the appeal. In that case, plaintiff's counsel participated in the taking of five depositions. One was taken in his law office in Opelousas, two were taken in physicians' offices located in Opelousas, one deposition was taken in a physician's office located in Lafayette, and the last was taken in a physician's office in Lake Charles. Plaintiff's attorney participated in the trial which lasted approximately half a day, filed post-trial memoranda, filed various pleadings, and filed an appellate brief.
It is our opinion that the trial court erred in awarding $9,000 in attorney's fees to plaintiff. We will decrease that award to $7,500.
Costs of this appeal are to be borne by USF & G.
AMENDED AND AFFIRMED.