602 So.2d 207 (1992)
Rickey J. POIRRIER, Plaintiff-Appellee,
v.
OTIS ENGINEERING CORP., et al., Defendant-Appellant.
No. 91-2.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*208 Juneau, Judice, Hill & Adley, Kraig T. Strenge, Lafayette, for Otis.
Aubrey & Ziegler, Kim M. Hoffman, Lafayette, for Poirrier.
Before LABORDE and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
This is a worker's compensation case. Defendants, Otis Engineering Corporation (Otis) and Highlands Insurance Company (Highlands), suspensively appeal the trial court's award of $8,000 attorney's fees and 12% penalties for their arbitrary and capricious termination of plaintiff's worker's compensation benefits and their refusal to pay medical expenses.
On appeal, appellants contend the award of attorney's fees and penalties is unsupported by the record evidence and, alternatively, the award is excessive and should be reduced.
Appellee, Rickey J. Poirrier, answered the appeal requesting an additional award of attorney's fees.

FACTS
The facts, as stated by the learned trial judge in his reasons for judgment, are as follows:

*209 "REASONS FOR JUDGMENT
This matter arises out of an injury sustained by Ricky J. Poirrier while in the course and scope of his employment as a machinist with Otis Engineering Corporation on June 27, 1988. The trial of this matter was held on January 10, 1990. Subsequent to this injury, Mr. Poirrier was treated by Dr. Landry in New Iberia, Louisiana, who diagnosed a lumbar strain. It did not resolve, and Dr. Landry referred Mr. Poirrier to Dr. Sutton, an orthopedic surgeon in New Iberia, Louisiana.
Dr. Sutton first saw Mr. Poirrier on July 21, 1988. At that time, he complained of pain in the lower lumbar area extending into the left buttock and hip and down the left leg to the foot. Dr. Sutton's impression at that time was an acute lumbar strain with possible discogenic pathology. He thereafter admitted Mr. Poirrier to Dauterive Hospital for non-operative treatment consisting of traction, physical therapy, and medication. Mr. Poirrier remained in the hospital for approximately one week, and was discharged on July 27, 1988. At the time of his discharge, Mr. Poirrier continued to complain of pain in his back and left leg. Mr. Poirrier began seeing Dr. James McDaniel on August 3, 1988. He related the onset of his problem to the incident of June 27, 1988, and again complained of pain in the left lower lumbar area and left hip, down his left leg and into his foot. Dr. McDaniel conducted a physical examination of Mr. Poirrier and recommended a myelogram with a post-myelogram CT scan. Dr. McDaniel interpreted the myelogram and the post-myelogram CT scan as normal. Mr. Poirrier subsequently underwent an MRI, which Dr. McDaniel interpreted as showing a minimal finding at the L5,S1 level on the left side, but this too he felt was within normal limits. Dr. McDaniel did admit that the findings from the MRI were consistent with Mr. Poirrier's symptoms and complaints of pain. Mr. Poirrier continued to experience pain and because of this Dr. McDaniel administered an epidural cortisone injection which provided temporary relief. Mr. Poirrier again saw Dr. McDaniel on September 19, 1988, and he continued to have symptoms of pain which were localized over the left sacroiliac joint area. Dr. McDaniel ordered laboratory studies to determine if Mr. Poirrier was afflicted with some type of spondylitis. The testing proved negative.
Dr. McDaniel released Mr. Poirrier to return to work and Mr. Poirrier did not return to his regular employment on November 8, 1988. After having worked seven hours of an eight hour day, Mr. Poirrier was not able to complete the work day due to pain. On the following day Mr. Poirrier met with Dr. McDaniel complaining of severe pain in his left leg. At this time, Dr. McDaniel administered another epidural cortisone injection. Dr. McDaniel recommended that Mr. Poirrier stay off of work until his next appointment, scheduled for November 14, 1988. At this time, instead of releasing Mr. Poirrier to work, Dr. McDaniel recommended and prescribed a work-hardening program.
Mr. Poirrier again saw Dr. McDaniel on December 7, 1988, at which time Mr. Poirrier indicated that he attempted to follow through the work-hardening program, but that it had caused his condition to worsen.
It was after this last visit with Dr. McDaniel that Mr. Poirrier returned to see Dr. Sutton, on December 16, 1988. Again, he complained of pain in the lower back and extending into his left leg. Mr. Poirrier underwent physical therapy, and returned to see Dr. Sutton in February of 1989, at which time he indicated that his condition had improved somewhat. Mr. Poirrier indicated that although his condition, he felt, had improved somewhat, he still continued to experience pain in his back and left leg.
Mr. Poirrier continued with his physical therapy and again met with Dr. Sutton on April 10, 1989, at which time Mr. Poirrier again complained of pain in his lower back and left leg. At this time, Dr. Sutton felt that there was nothing *210 more he could offer Mr. Poirrier, therefore, Mr. Poirrier stopped seeing Dr. Sutton and also discontinued the physical therapy which had been prescribed by Dr. Sutton. It is important to note that at this time Dr. Sutton did not release Mr. Poirrier to return to work.
The next physician to treat and/or examine Mr. Poirrier was a neurosurgeon, Dr. Stephen Goldware. Mr. Poirrier was referred to Dr. Goldware by an internist he had consulted by the name of Dr. Kenneth McCarron. The first meeting with Dr. Goldware took place on April 25, 1989. Once again, Mr. Poirrier complained of pain in his back radiating down his left lower extremity, and he related the onset of his pain to the lifting injury sustained at work on June 27, 1988. Dr. Goldware conducted a thorough physical examination and reviewed the lumbar myelogram and post-myelogram CT scan performed in August of 1988. Dr. Goldware found a positive straight leg raising on the left side, and he diagnosed a possible L5 radiculopathy. Dr. Goldware recommended a course of rehabilitation therapy through two specialists in the field of physical medicine and rehabilitation. At this time the compensation carrier refused to approve treatment by these specialists.
Mr. Poirrier returned to Dr. Goldware on June 20, 1989, with the same complaints of pain, and Dr. Goldware had essentially the same findings. He again recommended physical rehabilitation through the two specialists he had previously recommended. Drs. Anseman and Hodges, and he tried to get the insurance company to approve treatment, but they did not. Mr. Poirrier's compensation benefits were terminated on June 23, 1989. Despite the termination of compensation benefits, Mr. Poirrier continued to see Dr. Goldware, and on June 30, 1989, Dr. Goldware issued a note indicating that Mr. Poirrier was not fit for duty until further notice.
Mr. Poirrier next saw Dr. Goldware on August 15, 1989, at which time Mr. Poirrier had a positive straight leg raising on the left and the left ankle reflex was slightly diminished. Based on these findings, Dr. Goldware recommended that Mr. Poirrier undergo nerve conduction studies by Dr. Tim Himel, a neurologist of New Iberia, Louisiana.
The studies performed by Dr. Himel did not give any definite indications of a lumbar radiculopathy, however, Dr. Himel indicated his impression that Mr. Poirrier was suffering from a significant left sided sciatica which by history was suggestive of a lumbar radiculopathy. Dr. Himel further stated that surgical options should be considered in attempting to provide Mr. Poirrier with relief from his symptoms.
Dr. Goldware next saw Mr. Poirrier on October 24, 1989, at which time Mr. Poirrier had a positive straight leg raising on the left and a diminished sensation in the autonomous zone for the L5 level on the left. At this time Dr. Goldware recommended exploratory surgery at the L4, L5 and L5-S1 levels on the left side, and scheduled Mr. Poirrier for this. Mr. Poirrier's compensation insurer refused to authorize surgery, and had Mr. Poirrier undergo an independent medical examination. Accordingly, Mr. Poirrier was examined by Dr. Richard Levy of New Orleans.
Dr. Richard Levy's examination of Mr. Poirrier yielded three abnormal findings: limitation of forward bending while standing to 60 degrees; tenderness over the left lumbar region and over the left buttock; a positive straight leg raising test on the left at 45 degrees and on the right at 60 degrees. In addition to his physical examination of Mr. Poirrier, Dr. Levy reviewed the diagnostic studies which had previously been performed. Dr. Levy noted that Mr. Poirrier had a mild circumferential bulge of the disc at the L4-L5 level on the August 8, 1988 post-myelogram lumbar CT scan; a mild broad based posterior disc bulge at the L5-S1 level, more prominent on the left on the lumbar MRI scan; and, a mild circumferential disc bulge at the L4-L5 level on the May 8, 1989 post-myelogram lumbar CT scan. Dr. Levy disagreed *211 with Dr. Goldware's recommendation for surgery. However, evidence was introduced to the effect that Dr. Levy recommended that Mr. Poirrier remain off of work for at least three to six months."
At trial, all parties stipulated that: 1) Highlands is the worker's compensation insurer of Otis; 2) on the date of the accident, Poirrier was employed by Otis; 3) Poirrier's worker's compensation rate is $262 per week; 4) Highlands has paid worker's compensation benefits to Poirrier in the amount of $262 per week from June 27, 1988 through June 23, 1989; and 5) all medical expenses except for treatment by Dr. Goldware, Dr. Himel and Dr. McCarron have been paid by Highlands.

TERMINATION OF WORKER'S COMPENSATION BENEFITS
LSA-R.S. 23:1201.2 provided in pertinent part:
"Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims."
Similarly, statutory penalties are due in worker's compensation proceedings only if the right to such benefits has been reasonably controverted or nonpayment resulted from conditions over which the employer or insurer had no control. LSA-R.S. 23:1201 E.
Commenting on whether penalties are due, Judge Guidry, as organ for this court stated:
"[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case."
Chelette v. American Guar. & Liability Ins., 480 So.2d 363, 367 (La.App. 3rd Cir. 1985).
In the case sub judice, the record evidence demonstrates that the trial court did not err in awarding penalties and attorney's fees. When Poirrier's worker's compensation benefits were terminated, neither Dr. Sutton, Dr. McDaniel nor Dr. Goldware had released him for work. Dr. Sutton regarded Poirrier's subjective complaints of lower back and leg pain as consistent with a discogenic pathology and opined that his job duties exceeded his physical limitations. Dr. McDaniel, who initially released Poirrier for work and then saw him the following day for severe leg pain, advised him not to return to work and recommended a work hardening program. Dr. McDaniel firmly believed that Poirrier was not a malingerer and observed that his subjective complaints of pain increased through their visits. Dr. Goldware found both subjective and objective signs of injury and recommended physical rehabilitation. Additionally, although Dr. Goldware notified Highlands that Poirrier was not fit for work, Highlands did not reinstate worker's compensation benefits.
Charlie Miller, the claims manager for Highlands, admitted at trial that none of the treating physicians had released Poirrier for work and remembered Dr. Goldware's correspondence finding Poirrier not fit for work.
We find the record supports the findings of the trial court. Accordingly, it was within its ample discretion in awarding penalties and attorney's fees, and we will not disturb this award.
Additionally, we cannot say that the trial court was clearly wrong in awarding attorney's fees for Highlands' arbitrary and capricious refusal to authorize medical treatment by Dr. Goldware.
LSA-R.S. 23:1121 allows an employee to select one treating physician in any field or speciality without obtaining prior approval. *212 Poirrier, who attempted to obtain prior approval from Highlands, sought treatment from Dr. Goldware, a neurologist, after treatment by two orthopaedists did nothing for his back and leg pain. Poirrier had not yet seen a neurologist, and under the clear language of the statute, was entitled to an examination by Dr. Goldware. Cf. Fontenot v. Fireman's Fund Ins. Co., 549 So.2d 917 (La.App. 3rd Cir.1989) (no attorney's fees due since plaintiff already had a treating physician in the field of neurosurgery.)
Alternatively, Otis and Highlands contend that the award of $8,000 attorney's fees is excessive and should be reduced.
The factors considered in determining the amount of attorney's fees awarded in worker's compensation cases include the degree of skill and ability exercised, the amount of the claim, the amount recovered and the amount of time devoted to the case. Polk v. U.S. Fidelity & Guar. Ins. Co., 578 So.2d 209 (La.App. 3rd Cir. 1991). The trial court has great discretion in the award of attorney's fees and will not be disturbed absent manifest error. Id.
The record contains a detailed itemized list of the attorney's expenses and time involved in prosecuting Poirrier's worker's compensation claim. Considering the extent of discovery and the degree of complexity involved in this case, we will not second-guess the trial judge's award of $8,000 attorney's fees.

ANSWER TO APPEAL
Poirrier answered the appeal and requests additional attorney's fees for the appellate work. Breshers v. DOTD, State of La., 536 So.2d 733 (La.App. 3rd Cir. 1988), writs denied, 541 So.2d 854, 856 (La. 1989). A review of the additional work necessitated by this appeal reveals that an award of $2,000 attorney's fees is warranted. Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir.1988).
For the foregoing reasons, the judgment of the trial court is affirmed.
It is ORDERED, ADJUDGED AND DECREED that an additional amount of attorney's fees of $2,000 is awarded to plaintiff, Rickey J. Poirrier.
Costs of this appeal are assessed to defendant-appellants, Otis Engineering Corporation and Highlands Insurance Company.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.