626 So.2d 79 (1993)
Hubert DIETZ, Plaintiff-Appellee,
v.
GUICHARD DRILLING COMPANY, Defendant-Appellant.
No. 93-111.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*80 Jacque Berchmans Pucheu, Jr., Eunice, for Hubert Dietz.
Samuel Robert Aucoin, Lafayette, for Guichard Drilling Co.
Before STOKER, DOUCET and SAUNDERS, JJ.
SAUNDERS, Judge.
This is a worker's compensation case. This appeal was brought by Guichard Drilling Company (Guichard) and its insurer, CNA Insurance Company, defendants-appellants herein,[1] from a judgment in favor of Hubert Dietz, plaintiff-appellee herein, in the amount of $13,595.57 in medical and mileage reimbursements. Additionally, judgment was rendered in favor of Pucheu, Pucheu and Robinson, Dietz's attorneys, and against defendants in the amount of $4,000.00 in attorney's fees.
By answer to appeal, Dietz prays for an additional award of attorney's fees for the time and expenses involved in bringing this appeal.
We affirm the judgment of the hearing officer and award Dietz an additional $2,000.00 in attorney's fees for this appeal.

FACTS
The following facts were stipulated to at trial. Dietz suffered a compensable injury while working for defendant-employer on November 28, 1986. Since then, he has received $261.00 per week in weekly compensation. The weekly compensation was terminated temporarily on March 17, 1992, but reinstated with back compensation beginning June 19, 1992.
At issue at the worker's compensation hearing were medical expenses stipulated as totalling $15,828.77, together with mileage reimbursement connected with those medical expenses in the stipulated amount of $256.80. It was also stipulated that on January 3, 1991, Dr. Frank Anders, an orthopedic surgeon, performed a diskogram and upon the findings of the diskogram, at the same time, did a surgical procedure known as a percutaneous diskectomy. The worker's compensation insurer of Dietz's employer did not pay the expenses of these procedures, alleging that it was not liable because the procedures were unnecessary and because the claimant and Dr. Anders did not seek approval of the procedures from the insurer before performing them. Additionally, the insurer has refused to pay for post-January 1991 prescriptions issued by Dr. Bobby Deshotel, a general practitioner and the treating physician of Dietz, and for mileage reimbursement.
Conversely, Dietz maintains that the surgical procedures, prescriptions and mileage were necessary medical expenses as contemplated under LSA-R.S. 23:1203. Dietz also argues that the version of LSA-R.S. 23:1142 *81 upon which the defendants-appellants rely is not the applicable version of the statute.
The sole issue before this court is whether Guichard is responsible, under the mandate of LSA-R.S. 23:1142, for the payment of medical expenses incurred by Dietz without the prior approval of the defendants or the court.
Appellants contend that the trial court erred in applying LSA-R.S. 23:1142 as it read at the time of Dietz's injury, November 28, 1986, rather than applying the statute as it read at the time Dietz had the disputed surgery, January 3, 1991.
At the time of plaintiff's injury, November 28, 1986, LSA-R.S. 23:1142 provided:
"Physician's and chiropractor's fees; privilege.
"Fees for doctors of medicine or doctors of chiropractic for services, treatment, or testimony under this Chapter shall be reasonable, shall be related to the worker's injury, and shall not be enforceable unless agreed upon by all parties concerned or approved by the director, or, if proceedings are brought under R.S. 23:1311, by the court. The doctor of medicine or doctor of chiropractic shall have a privilege for the payment of those fees to the same extent and upon complying with the same procedure as are granted to and required by hospitals in R.S. 9:4751 through 4755. Such provisions are hereby made applicable to any person, firm, or organization providing medical, surgical and hospital services, medicines, or non-medical treatment or prosthetic devices to an injured employee pursuant to R.S. 23:1203."
The statute was amended in 1987 and 1988. At the time Dietz incurred the contested medical expenses, beginning in January of 1991, LSA-R.S. 23:1142 read, in pertinent part, as follows:
"B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
....
D. Fees and expenses. If the payor has not consented to the employee's request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services."
Also relevant to any discussion regarding an employer's duty to pay medical expenses on behalf of its injured employee, is LSA-R.S. 23:1203, which states, in pertinent part, as follows:
A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available.
* * * * * *
C. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under this Section.
Plaintiff contends, correctly we find, that the law in effect at time of Dietz's injury is *82 the law applicable to the issue at bar. See Fontenot v. Fireman's Fund Ins. Co., 549 So.2d 917 (La.App. 3d Cir.1989).
As stated in Hill v. L.J. Earnest, Inc., 568 So.2d 146, 152 (La.App. 2d Cir.), writ denied, 571 So.2d 652 (La.1990):
"The Louisiana Workers' Compensation Act in effect on the date of plaintiff's injuries is controlling. Holiday v. Borden Chemical, 524 So.2d 285 (La.App. 1st Cir. 1988), writ denied, 531 So.2d 283 (La.1988) and Hernandez v. F.W. Woolworth Company, 516 So.2d 139 (La.App. 4th Cir. 1987), writ denied, 516 So.2d 361 (La. 1987)."
A similar issue was presented to this court in Miller v. J.P. Owen Co., Inc., 509 So.2d 1038, 1040, 1041 (La.App. 3d Cir.), writ denied, 514 So.2d 455 (La.1987), wherein we held that an amended statute would not be applied retroactively:
"Under Louisiana law, there is a strong presumption against retroactive application of legislation. La.C.C. art. 8 provides: `A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.' Furthermore, La.R.S. 1:2 provides: `No section of the revised statutes is retroactive unless it is expressly so stated.' Thus, according to La.R.S. 1:2, it is clear that unless the Legislature announces the retroactive application of a statute, it is to be applied prospectively.
"We are aware that the results of the above principle may not necessarily conform with some of the past jurisprudence which has developed certain exceptions to the rule of prospectivity, however, a literal reading of La.R.S. 1:2 would eliminate these exceptions. The Legislature is free to announce a retroactive application, thus freeing the court from the need to make such a decision, unless there are constitutional problems involved. See: H. Alston Johnson, LegislationProcedure and Interpretation, 45 La.L.Rev. 341-356 (1985). Because the Legislature did not do so in this case, we find that retroactive application was not intended. Thus, La.R.S. 23:1102(C) as amended will not be retroactively applied to the instant dispute.
"Even if this court were to entertain the thought of applying La.R.S. 23:1102(C) retrospectively provided that it fits within one of the jurisprudentially created exceptions, after a careful review of the statute we find that the statute does not fit any exception. The three exceptions to the general rule of prospectivity are laws which are procedural, remedial or curative. If a statute is procedural, remedial or curative, it may be accorded retroactive effect. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). However, laws that are substantive in nature are to be applied prospectively.
"A substantive law is a law which generally creates new rights where none previously existed. In our opinion La.R.S. 23:1102 is substantive in nature. The amended statute creates an obligation on the part of plaintiff to obtain approval of the employer for any agreement with third parties, thus withdrawing certain rights from plaintiffs and creating other rights to employers in the same action. Additionally, the statute as amended also creates an obligation on the part of a third party to obtain approval of an intervenor for any agreement with plaintiff, withdrawing certain rights from third parties and creating other rights to intervenors in the same action. Thus, because the amended statute creates new rights where none previously existed, we find that it is substantive in nature. As such, this court is prohibited from applying the statute retroactively."
Under the version of the law in effect at the time of Dietz's injury, physician's fees or expenses are recoverable even though approval from the insurer was not sought prior to the incurring of the expenses if proceedings are brought to the court pursuant to LSA-R.S. 23:1311[2] and the court finds that the expenses were for necessary medical services.
Under the statute in effect on January 3, 1991, at the time Dietz's surgery, Dietz would not be reimbursed for more than $750.00 for unapproved testing and surgery *83 unless it was performed under emergency conditions. The workers' compensation hearing officer found that this change had a substantive effect on the right of the employee. The hearing officer also found that the surgical procedures performed by Dr. Anders were necessary medical treatment within the meaning of LSA-R.S. 23:1203, relying upon the medical opinions of Drs. Deshotel, Jackson and Anders and, therefore, the disputed expenses relating to prescriptions and mileage reimbursement were necessary and are owed by the insurer to Dietz. These findings of fact made by the trier of fact are completely supported by the record.
By their final assignment of error, defendants contend that the hearing officer erred in awarding Dietz $4,000.00 in attorney's fees. Essentially, they argue that their refusal to pay plaintiff-appellee's unapproved medical expenses was due to a reliance upon their interpretation of LSA-R.S. 23:1142, as it read on January 3, 1991, the time of Dietz's surgery.
The hearing officer, in finding defendants' behavior arbitrary and capricious and in granting attorney's fees in the amount of $4,000.00, stated:
"A misunderstanding of the law can alone be deemed arbitrary and capricious behavior. But the primary reason for finding arbitrary or capricious behavior is clear from reading the deposition of the insurer's representative. It essentially shows the insurer's desire to shut down or close out the claimant's file, and that the insurer considered the law to be, at most, in the way, like a barrier reef to ships intending to land which has to be negotiated or maneuvered around. The insurer did not tread the waters lightly: the deposition shows, for reasons stated in claimant's post-trial memorandum, with which the Court agrees, that the law and claimant's situation were not primary considerations before refusing to pay for the surgical procedures and the prescriptions. Defense counsel's able skill in repairing the insurer's handling of the case cannot alter or hide that fact."
We find that the record supports the findings of the hearing officer and cannot say that the hearing officer was clearly wrong in awarding attorney's fees for defendants' arbitrary and capricious refusal to pay Dietz's medical expenses. The hearing officer has great discretion in the award of attorney's fees and will not be disturbed absent manifest error. See Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La.App. 3d Cir.1992); Polk v. U.S. Fidelity & Guar. Ins. Co., 578 So.2d 209 (La.App. 3d Cir.1991).

ANSWER TO APPEAL
Dietz answers the appeal and requests additional attorney's fees for the appellate work. A review of the additional work necessitated by this appeal reveals that an award of $2,000.00 in attorney's fees is warranted.

DISPOSITION
For the foregoing reasons, the judgment of the hearing officer is affirmed.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that an additional amount of attorney's fees of $2,000.00 is awarded to plaintiff, Hubert Dietz, for the work necessitated by this appeal.
Costs of this appeal are assessed to defendants-appellants, Guichard Drilling Company and CNA Insurance Company.
AFFIRMED AND RENDERED.
NOTES
[1] The judgment appealed from was cast against Guichard Drilling Company and American Casualty Company of Reading, PA.
[2] Prior LSA-R.S. 23:1311 claims are now properly filed under the Hearing Officer system. See Ross v. Highlands Insurance Co., 590 So.2d 1177 (La.1991).