640 So.2d 523 (1994)
Gregory GARY, Plaintiff-Appellee,
v.
D.E. PAGE CONSTRUCTION, et al., Defendants-Appellants.
No. 93-1266.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*524 Nicholas Pizzolatto Jr., Lake Charles, for Gregory K. Gary.
Steven Claude Judice, Baton Rouge, for D.E. Page Const.
Before SAUNDERS, DECUIR, JJ., and BERTRAND[1], J. Pro Tem.
SAUNDERS, Judge.
Defendants-appellants, D.E. Page Construction and Louisiana Construction and Industry Self Insurers Fund (hereinafter PAGE CONSTRUCTION), appeal a judgment from the Office of Workers' Compensation, District 03, granting plaintiff-appellee, Gregory K. Gary (hereinafter GARY), workers' compensation benefits, penalties and attorney's fees. PAGE CONSTRUCTION contends that the hearing officer erred when: it ruled that GARY met his burden of proof establishing that his injury was work-related; it allowed GARY to present evidence in support of his claim for penalties and attorney's fees; and it ruled that PAGE CONSTRUCTION was arbitrary and capricious in handling GARY'S claims.
For the reasons which follow, we affirm the hearing officer's ruling.

FACTS
Plaintiff-appellee, GARY, was employed by PAGE CONSTRUCTION in April, 1992, as an equipment operator. He operated heavy equipment including back hoes, track hoes, dozers, and pickers.
In June of 1992, while GARY was cleaning dry hardened mud from the tracks of the machine that he was operating, he began to experience tightness, hardness, and swelling of his arm. He sought treatment that evening after work, but the doctors were unable to diagnose the problem. GARY worked the balance of the week despite the swelling and pain in his arm. The pain and swelling persisted, and eventually, GARY had to be hospitalized at which time doctors discovered a blood clot in his arm. After treatment in the hospital, GARY returned to work, but was terminated due to a reduction in PAGE CONSTRUCTION'S work force requirements.
PAGE CONSTRUCTION declined to pay GARY'S medical bills or any workers' compensation benefits alleging that GARY'S injury was unrelated to his work.
GARY filed a claim with the Office of Workers' Compensation. On March 10, 1993, the hearing officer ruled that GARY had met his burden of proving that the injury was work-related and also that PAGE CONSTRUCTION was arbitrary and capricious in handling GARY'S claims and awarded penalties and attorney's fees.

I. Issues Presented
1) Whether GARY met his burden of proving by clear and convincing evidence that he suffered a work-related injury. 2) Whether the hearing officer erred when it allowed GARY to present evidence in support of a claim for penalties and attorney's fees when no such relief was specifically prayed for in his pleadings. 3) Whether the hearing officer erred in finding that PAGE CONSTRUCTION was arbitrary and capricious in handling GARY'S claims. 4) Whether GARY is entitled to attorney's fees for defense of this appeal.

*525 II. Law and ArgumentIssue I

Whether GARY met his burden of proving by clear and convincing evidence that he suffered a work-related injury.
Louisiana Revised Statute Title 23 Section 1021(7)(e) provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or pre-existing condition was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
Consequently, when a claimant's alleged work-related injury is heart-related or perivascular, the claimant's burden of proof is more burdensome than for other types of injuries, i.e. clear and convincing evidence rather than a preponderance of the evidence. The statute sets up a two prong test for workers' compensation claimants alleging perivascular or heart-related work injuries. First, a claimant must prove by clear and convincing evidence that extraordinary stress from work caused the injury, and second, that it was not caused by some other trauma or by a pre-existing injury. More specifically, a claimant must show that his injury was caused by the exertion of physical stress that was extraordinary or unusual in comparison to the stress or exertion put forth by the average worker in his same occupation, and additionally, negate other reasonable causes of his injuries.
It is undisputed in this case that GARY suffered a perivascular injury. The principle issue before this court is whether he proved by clear and convincing evidence that it was caused by his exertion of extraordinary physical stress from work and not caused by other trauma or by a pre-existing injury.
"Burden of proof by clear and convincing evidence requires a party to persuade the trier of fact that the fact or causation sought to be proved is highly probable, i.e. much more probable than its non-existence. This burden is an intermediate one between the burden of proof by a preponderance of the evidence and burden of proof beyond reasonable doubt." Chatelain v. State Dept. of Transp. and Development, 586 So.2d 1373 (La.1991) (citations omitted) (emphasis added). The hearing officer recognized the provisions of the statute and the applicable burden of proof. The record reveals discussions between the hearing officer and the attorneys wherein the provisions of the statute are specifically addressed. Moreover, reasons for judgment given by the hearing officer clearly indicate that the hearing officer was cognizant of the burden of proof carried by the plaintiff. We find no manifest error in the burden of proof applied in this case by the hearing officer.
We first address the issue whether the track cleaning performed by GARY was extraordinary. The record supports the hearing officer's conclusion that the mud that GARY removed from the tracks of his machine was extremely hard and required unusual and extraordinary force to remove. The hardened mud encountered by GARY was not typical for an operator at PAGE CONSTRUCTION and its removal required unusual and extraordinary force not exerted by the average worker in his occupation.
A. [GARY] Generally, you just have to stick it in and work it around and get the mud out, but the clay was so hard that I was having to, you know, jam that shovel into it, force it in there. (Emphasis added).
* * * * * *
A. [Gary] Well, I couldn't bust it up. It wasit would have taken quite a bit of work to get it out of there, but after my armafter that happened, I quit [cleaning]. I didn't do anything more to it.
From the testimony of Robert Tucker, another operator at PAGE CONSTRUCTION, *526 we again note direct testimony supporting the hearing officer's findings.
Q. How was the clay on the tracks Monday afternoon; was it easy to remove
A. [Tucker] No.
Q. hard to remove?
A. [Tucker] Like concrete.
Q. It took a lot of time?
A. [Tucker] Lot of time, lot of beating, lot of swinging. It's not easy to get off. (Emphasis added).
While it may be true that the average operator at PAGE CONSTRUCTION was required to maintain his equipment, which included cleaning the tracks on a regular basis, the direct testimony of the witnesses supports the hearing officer's conclusion that the cleaning work done by GARY on the day of the incident was not that ordinarily performed by the average PAGE CONSTRUCTION operator. Tucker specifically contrasts the conditions on the day of the incident with other typical days that they cleaned tracks. He states that track cleaning for operators on that day required more than the average physical exertion: "lot of time," "lot of beating," and "lot of swinging."
We next address the issue whether the track cleaning performed by GARY was the cause of his injury. Dr. Kober, a general vascular and thoracic surgeon who treated GARY, described the injury sustained by GARY as a "effort thrombosis" of the right subclavian vein.
Q. And what is an effort thrombosis?
A. [Dr. Kober] It's occlusion of the vein, due to a blood clot, which is brought on by physical effort; heavy lifting or heavy physical activity, usually. (Emphasis added).
* * * * * *
A. [Dr. Kober] Oh, there can be other causes; certainly, but it was certainly the most likely diagnosis in this scenario and clots in this location are distinctly unusual, unless it's associated with effort thrombosis or severe thoracic outlet syndrome. (Emphasis added).
* * * * * *
Q. What would cause that syndrome?
A. [Dr. Kober] Well, it canthe causes can be multiple. It can be idiopathic, have no known cause. It can follow any traumatic injury, such as a motor vehicle accident, a fall, heaving [sic] lifting. Waitresses and waiter [sic] are especially prone to it. (Emphasis added).
* * * * * *
Q. Is [sic] you were to assume that a particular lifting event caused the tear in the lining, which began the clotting process, how long would it take before a person would reasonably expect to see any noticeable swelling in the arm, as a result of that?
* * * * * *
A. [Dr. Kober] You really can't. I mean, you know, technically, it could be a very acute event. As a minimum, could occur almost immediately. They could noticethey wouldn't notice swelling immediately. They'd notice that stiffness, some tightness in the arm. (Emphasis added).
* * * * * *
Q. But the immediate onset of swelling would be unlikely; is that fair to say?
A. [Dr. Kober] Yeah.
Q. I mean in relation to the insult that tears the lining.
A. Yeah. You'd have to assume that it would be unlikely, but it's not impossible.
* * * * * *
Q. Okay. The history that you have is thatis that the swelling started at work. The fact that the swelling started at work does not tell you, as a doctor, and as a vascular surgeon, that theor the tear in the lining occurred while at work; correct?
A. [Dr. Kober] You know, we'd have to assume cause and effect relationship, sure. (Emphasis added).
* * * * * *

*527 A. I think that there's a cause and effect relationship. I have to give my opinion, based on my best medical judgment and that's my best medical judgment.
* * * * * *
A. [Dr. Kober] Well, I make that conclusion based on my prior knowledge of this case, but I don't have that right in front of me now to tell you that. I mean if he said, look, you know, in addition, I lift weights, and this, that and the other, and you know, I had that. What you're trying to say, I think, which is legitimate, is could this have happened from some other cause? I mean could he have done this
Q. Right.
A. before, and he could have, sure. But I think it's unlikely. I think the likelihood is that it was caused by what happened at work. (Emphasis added).
While Dr. Kober could not rule out every possible cause of the clot, in his expert opinion, GARY'S injury was an "effort" thrombosis caused from activities at his job. In this case, Dr. Kober was aware of GARY'S medical history and noted no pre-existing injury or other trauma that could have caused GARY'S injury. GARY himself testified at the hearing concerning other trauma or preexisting injuries and none were established.
PAGE CONSTRUCTION argues that GARY failed to carry his burden to prove that the injury was caused by work-related activities and that the plaintiff must discount other reasonable causes. The expert testimony, however, clearly supports the hearing officer's conclusions concerning causation. In addition, GARY'S own testimony, consistent with others who testified and uncontroverted by PAGE CONSTRUCTION, supports the hearing officer's findings that GARY, by clear and convincing evidence, disproved other reasonable causes of his injuries. While a plaintiff must show that it is highly probable that his injuries were caused by work-related activities and not by something else, in this case PAGE CONSTRUCTION failed to recognize that once GARY met that burden they were required to offer evidence to refute or discredit the evidence offered by plaintiff. PAGE CONSTRUCTION offered absolutely no evidence to contradict, controvert, refute, or discredit, the overwhelming evidence presented by plaintiff.
In sum, GARY had no pre-existing injuries before the incident and no intervening trauma from the date of the incident to the date the clot was discovered. After using unusual or extraordinary force to remove hardened mud from the tracks of the machine that he was operating he experienced stiffness in his arm. A co-worker stated that GARY thought that he may have pulled a muscle. GARY began to feel pain and the arm began to swell. A co-worker stated that GARY'S arm was like that of the cartoon character "Popeye." Within days of the incident, doctors discovered the clot. This testimony by the witnesses was consist and uncontroverted.
When reviewed in its entirety, the circumstantial evidence excludes all other reasonable hypotheses for the causation of the GARY'S injury. Particularly, when reviewed in light of the expert's testimony, we find that the record clearly supports the hearing officer's finding that GARY proved his injury was work-related and not caused by other trauma or a pre-existing injury.
"Jurisprudence clearly establishes that in workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the `manifest error-clearly wrong' standard. The same standard of appellate review applicable to actual findings of district courts is also applicable to the factual findings of an administrative body or hearing officer." Alexander v. Pellerin Marble & Granite, 630 So.2d 706 (La.1994) (citations omitted). That standard prohibits an appellate court from setting aside the lower court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of fact should not be disturbed upon review, even though we may feel that our own evaluations and inferences are as reasonable. Rosell v. ESCO, 649 So.2d 840 (La.1989).

*528 "The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
"When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong."
Id. (citations omitted). We have reviewed the record in great detail and find that the evidence, direct, circumstantial, and expert, presented by the plaintiff more than satisfies the requisite burden of proof and the hearing officer's findings of fact and final judgment.

II. Law and ArgumentIssue II
Whether the hearing officer erred when it allowed GARY to present evidence in support of a claim for penalties and attorney's fees when no such relief was specifically prayed for in his pleadings.
Defendant claims that they were not aware of plaintiff's intent to seek special damages until the hearing began and were caught unduly by surprise. The statutes providing the procedure by which a person makes a claim for workers' compensation benefits do not require that penalties and attorney's fees be specifically or specially pleaded. Prior to the establishment of different districts where workers' compensation claims are presently made and heard, the Mix v. Mougeot case required that a plaintiff specifically pray for special damages. 446 So.2d 1352 (La.App. 1st Cir.1984). We hold that jurisprudence, as it relates to workers' compensation claims, is not applicable.
Our review of the workers' compensation statutes reveals that specific pleadings for penalties and attorney's fees are not required. See, LSA-R.S. 23:1311. The statutes are extremely broad and require that all of the evidence as to noncontested matters be heard by a hearing officer. LSA-R.S. 23:1310.5. "Upon the completion of such hearing or hearings, the hearing officer shall make such order, decision, or award as is proper, just, and equitable in the matter." Id. "The hearing officer shall decide the merits of the controversy as equitably, summarily, and simply as may be." LSA-R.S. 23:1317. We find that in every workers' compensation claim, all contested matters including penalties and attorney's fees, unless stipulated otherwise, are properly before the hearing officer. The statutes do not require special pleadings; therefore, PAGE CONSTRUCTION should not be surprised by a plaintiff's claim for penalties and attorney's fees. If a worker files a workers' compensation claim, everything is on the table. We hold that by statute the hearing officer is obligated to hear evidence for claims of penalties and attorney's fees and rule accordingly.

II. Law and ArgumentIssue III
Whether the hearing officer erred in finding that PAGE CONSTRUCTION was arbitrary and capricious in handling GARY'S claim.
The penalty provisions of LSA-R.S. 23:1201.2 are invoked if the action, e.g. denying payment for medical expense and loss of wages, of the insurer or the employer is found to have been arbitrary, capricious, or *529 without probable cause. "The employee's right to such benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee." Crowley v. City of Lafayette, 602 So.2d 40, 46 (La.App. 3d Cir.), writ granted, 601 So.2d 663 (La. 1992); reversed in part, 609 So.2d 199 (La. 1993) (citing Guidry v. United Furniture Distributor, 544 So.2d 100 (La.App. 3d Cir. 1989). "The purpose of the penalty provision of this statute is to discourage an attitude of indifference toward the injured employee." Spinks v. Dept. Of Health and Human Res, 591 So.2d 423 (La.App. 3d Cir.1991), writ granted in part, 595 So.2d 648 (La.), on remand, 605 So.2d 1384 (La.1992) (citing Alexander v. Dept. of Culture, etc., 410 So.2d 1286 (La.App. 3d Cir.1982). "A determination of whether a defendant should be cast with penalties and attorney's fees is essentially a question of fact." Alexander v. Pellerin Marble & Granite, supra. "A hearing officer has great discretion in the award of attorney's fees and will not be disturbed absent manifest error." Hubert Dietz v. Guichard Drilling Co., 626 So.2d 79 (La.App. 3d Cir. 1993).
The facts in this case do not support PAGE CONSTRUCTION'S contention that they reasonably believed that there was a different causal link between GARY'S injury and his work-related activities. Even with almost ten (10) months between the incident and the hearing, PAGE CONSTRUCTION was yet unable to gather any evidence to support that position. If PAGE CONSTRUCTION was as reasonable in their beliefs as they argue, we would reasonably expect that they could find and present some evidence to place in dispute the evidence presented by GARY concerning causation.
A review of the record in this case shows that the facts were "lopsidedly" in favor of GARY and could hardly be said to have been closely contested. PAGE CONSTRUCTION presented no contradictory evidence, except eliciting some minor inconsistencies in the testimony of GARY'S witnesses during cross-examination. In addition, we find no complicated legal issue in dispute. When the medical, legal, and factual support is as strong and clear as it is in this case and defendant offers little or nothing to dispute it or explain its reasoning why benefits are denied, we find ample support for a hearing officer's award of penalties and attorney's fees. We find no manifest error in the hearing officer's findings of fact and award of penalties and attorney's fees.

II. Law and ArgumentIssue IV
Whether GARY is entitled to attorney's fees for defense of this appeal.
GARY answered the appeal and requests additional attorney's fees for the appellate work. A review of the additional work necessitated by this appeal reveals that an additional award of $1,500.00 in attorney's fees is warranted. Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La.App. 3d Cir.1992) (citing Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1st Cir.1988).

Conclusion
For the foregoing reasons, the judgment of the hearing officer is affirmed.
IT IS ORDERED, ADJUDGED AND DECREED that an additional amount of attorney's fees of $1,500.00 is awarded to plaintiff-appellant, Gregory Gary.
Cost of this appeal are assessed to defendants-appellants, D.E. Page Construction and Louisiana Construction and Industry Self Insurers Fund.
AFFIRMED and RENDERED.
NOTES
[1] Judge Lucien C. Bertrand, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.